THE STATE OF KANSAS v. ALLEN HANSFORD.

No. 15,530. (92 Pac. 551.)

SYLLABUS BY THE COURT.

1. CRIMINAL LAW — *Discharge of Jury—Former Jeopardy.* Where, after a jury called in a criminal case are sworn and testimony is introduced, the court learns and determines from an inquiry judicially conducted that a juror is prejudiced and unfit to sit in the case, and that the disqualification is such as would vitiate a verdict, the jury may be discharged and another jury impaneled to try the case, and the defendant will not be deemed to have been thereby twice put in jeopardy for the same offense.

2. ——— *Discovery of Prejudice of a Juror after Trial Has Begun—"Accident" Warranting a Discharge.* The discovery and disclosure by the juror, after the trial was begun, that he entertained a prejudice growing out of an incident that occurred in his father's family, which was revived in his mind by the testimony given in the case and which unfitted him to sit as an impartial juror—something, too, which was not known and could not have been foreseen by the court, the parties or the counsel, was an "accident" within the meaning of that term as used in section 281 of the civil code (Gen. Stat. 1901, § 4728) and justified the court in discharging the jury from rendering a verdict.

Appeal from Shawnee district court; ALSTON W. DANA, judge. Opinion filed November 9, 1907. Affirmed.

STATEMENT.

ALLEN HANSFORD was prosecuted on a charge of statutory rape. Issue was joined by a plea of not guilty and the case brought on for trial. A jury was

duly impaneled, its members having satisfactorily answered all questions touching their qualifications as jurors. The trial was entered upon, witnesses were sworn and examined, and the case proceeded until adjournment at the end of the day. On the following morning when the court convened the trial judge said:

"Gentlemen, the court is informed that one of the jurors has a statement that he wants to make, and [addressing the juror], Mr. Landis, you may now have an opportunity to make such a statement as you have."

The juror, S. C. Landis, arose in the jury-box and said:

"If the court please, after hearing the plaintiff's testimony yesterday there was refreshed in my mind a circumstance similar to the one that we are trying, or have been trying here, and it has put my mind in such a shape that I am not sure whether I could give both the state and the defendant the same trial, and I ask to be excused."

Mr. Waters, one of the attorneys for the state, then questioned the juror and the juror answered as follows:

"Ques. I understand, Mr. Landis, that this was an affair that occurred in your own family. Ans. In my father's family.

"Q. In your father's family? A. Yes, sir.

"Q. As I understand it, the relation of this testimony here as given by the witness has not only refreshed your recollection but has arrayed in you some sort of prejudice and bitterness against a person charged with that sort of crime? A. No, it is the other way. I am afraid I cannot give the state a fair trial.

"Q. You have a prejudice?"

Here the court said, addressing the juror:

"I may remark here, Mr. Landis, that it is not necessary and not proper either for you to state on which side your prejudice is; it does not make any difference. We are as much concerned here that the defendant should have a fair trial as the state, and that the state should have a fair trial as the defendant, without any prejudice on either side."

Mr. Waters then further questioned the juror, and the juror answered as follows:

"Ques. I understand it has revived recollections in your mind by which your prejudices have been aroused? Ans. Yes, sir.

"Q. And to such an extent that in your mind you believe that you cannot sit as an impartial juror and hear this case? A. Yes, sir.

"Q. And you think you are doing your duty to arise in court and make that statement? A. Yes, sir.

"Q. At this early in these proceedings? A. Yes, sir.

"Q. And you are confident of the situation in your own mind? A. Yes, sir.

"Q. And it would be largely prejudicial to one side or the other if you were to continue in this trial? A. Yes, sir.

"Q. That the testimony that might come would be colored and prejudiced by your present ideas and opinions? A. Yes, sir.

"Q. And wholly revive the revival of that incident that you have spoken of? A. Yes, sir.

"Q. And that you think it would be to the interest of common and ordinary justice that you should not continue in this case any longer? A. I do.

"Q. And as an honest man you have made that statement to the court? A. Yes, sir."

Mr. Waters then addressed the court and said: "I cannot see but that your honor has got but one duty to perform." The court, addressing the juror, asked and the juror answered the following question:

"Ques. And this condition of your mind has come about, as the court understands it, since you took your oath to sit as a juror in this case? Ans. It has. Yes, sir."

Thereupon the court said:

"I think there is only one thing for the court to do under the circumstances, which is in the interest of common ordinary justice, and that is that this juror should be excused and this case continued until the next term of the court; and the court finds a mistrial, and that the excusing of juror Landis is absolutely necessary for the purposes of justice; and the defendant has an exception to the ruling and decision of the

court. Therefore the jury is discharged from further service upon this case, and this case is continued for the term. And the court fixes the amount of bond for the defendant's appearance at the next term of court at $1000."

The defendant objected to the rulings and order of the court, and also excepted thereto. Later the case was again brought on for trial, when the defendant filed a plea of former jeopardy, alleging the former proceedings, including the discharge of the jury over his objection and exception, and asking that he go hence without day. A demurrer to this plea was filed by the state, which the court sustained. From this ruling the defendant appeals.

*Fred S. Jackson,* attorney-general, *W. E. Atchison,* assistant county attorney, and *Waters & Waters,* for The State.

*Hazen & Gaw,* for appellant.

The opinion of the court was delivered by

JOHNSTON, C. J.: The appellant contends that the discharge of the jury in the manner and for the reasons stated and without his consent bars further prosecution. It is a well-settled principle of common and constitutional law that a person cannot be put in jeopardy a second time upon the same charge. It is a maxim of the common law that no one should be twice vexed for the same cause, and this rule has been incorporated in the federal and state constitutions. It finds expression in our own constitution in these words: "No person shall . . . be twice put in jeopardy for the same offense." (Bill of Rights, § 10; Gen. Stat. 1901, § 92.) Would a further trial of the appellant after the discharge of the jury constitute a double jeopardy? When an accused is placed upon trial, before a competent court and jury, upon a sufficient information or indictment, jeopardy is said to attach, and he cannot be put in jeopardy a second time unless the jury be discharged

from rendering a verdict by reason of some overruling necessity or the consent of the defendant. In this instance there was neither express nor implied consent, and the question remains, Did the interruption of the trial and the continuance of the prosecution at a later time subject the defendant to a second jeopardy, or was it any more than the continuance of the same jeopardy? He insists that there was no imperative necessity for discharging the jury from rendering a ·verdict, nor sufficient reasons to warrant the court in declaring a mistrial. The disclosure of the juror revealed the fact that he was disqualified to sit in the case and that the trial was proceeding with only eleven qualified and competent jurors.

It is conceded that the sickness or other physical disqualification of a juror or a judge which would unfit him for the performance of his duties would constitute a manifest necessity for a discharge of the jury. He would be equally disqualified by insanity or other mental disability, and when it is satisfactorily shown to the court by proper evidence that a juror is not in a fit condition of mind and has not the qualifications which the law requires it is clearly within its power and discretion to discharge the jury and declare a mistrial. If the disqualification is such as would frustrate the ends of justice and prevent a lawful verdict the rights of the defendant, as well as the interests of the public, require the court to arrest the progress of the trial and start afresh with a legal and impartial jury. If during the trial the court should learn of a corrupt interference with a juror or that through some outside sinister influence one of the jury had agreed to vote for conviction regardless of the testimony it would be conceded that a pressing necessity for the discharge of the jury had occurred. When a juror, as in this case, confesses to an incurable prejudice which disqualifies him from exercising the functions of a juror or acting impartially as between the parties a continuance of the trial would be a farce, as the object of a trial—

a fair and impartial verdict—becomes an impossibility. After learning of this situation by a judicial inquiry nothing was left for the court except to discharge that jury and impanel another.

In *Simons v. United States,* 142 U. S. 148, 12 Sup. Ct. 171, 35 L. Ed. 968, one of the jurors swore on his *voir dire* that he had no acquaintance with the defendant. During the trial it was brought to the attention of the court by an affidavit that there had not only been acquaintance but conversation between this juror and the defendant, and also it was undisputed that a letter since written and published in the newspapers commenting on that evidence had been read by that juror and other members of the jury. The trial court discharged the jury and held the defendant for further trial. The decision of the supreme court as to the right to discharge the jury was given in the syllabus of the case, as follows:

"When it is made to appear to the court during the trial of a criminal case that, either by reason of facts existing when the jurors were sworn, but not then disclosed or known to the court, or by reason of outside influences brought to bear on the jury pending the trial, the jurors or any of them are subject to such bias or prejudice as not to stand impartial between the government and the accused, the jury may be discharged, and the defendant put on trial by another jury; and the defendant is not thereby twice put in jeopardy, within the meaning of the fifth amendment to the constitution of the United States."

In *Thompson v. United States,* 155 U. S. 271, 15 Sup. Ct. 73, 39 L. Ed. 146, it appears that after the trial had begun it was disclosed that a member of the jury was disqualified by having been a member of the grand jury that found the indictment on which the prosecution was based. When that jury was discharged and another impaneled the defendant pleaded that he had been once in jeopardy upon the same charge, but this was overruled and the trial resulted in a verdict of guilty. It was held on appeal, following a number of

earlier cases, that "courts of justice are invested with authority to discharge a jury from giving any verdict whenever in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated, and to order a trial by another jury; and a defendant is not thereby twice put in jeopardy." (Syllabus.)

The case of *In re Ascher*, 130 Mich. 540, 90 N. W. 418, 57 L. R. A. 806, was one where after the jury were sworn and some of the witnesses had testified information came to the trial judge of the prejudice and misconduct of jurors after they were impaneled. An investigation was made which disclosed that a juror on his *voir dire* examination had wilfully concealed a material fact, and further that he entertained strong bias and prejudice in the case. It also appeared that he had been guilty of misconduct which betrayed his prejudices. Another juror and the officer in charge of the jury were found to have been also guilty of misconduct. The court concluded that it was within its power and was its imperative duty to discharge the jury and declare a mistrial. A question of jeopardy arose upon the appeal, and it was held that "where, after the jury is sworn in a criminal case, the court finds that a juror is so biased that he is unfit to sit in the cause, the jury may be discharged, and the respondent will not be deemed to have been placed in jeopardy by the proceedings." (Syllabus. See, also, *United States v. Perez*, 22 U. S. 579, 6 L. Ed. 165; *Logan v. United States*, 144 U. S. 263, 12 Sup. Ct. 617, 36 L. Ed. 429; *Dilworth v. The Commonwealth*, 12 Grat. [Va.] 689, 65 Am. Dec. 264; *State v. Allen*, 46 Conn. 531; *Commonwealth v. McCormick*, 130 Mass. 61, 39 Am. Rep. 423; *United States v. Morris*, 1 Curt. [U. S. C. C.] 23, 26 Fed. Cas. p. 1323; *State v. Davis*, 31 W. Va. 390, 7 S. E. 24; *Roberts v. State*, 72 Miss. 728, 18 South. 481; *Ochs v. The People*, 25 Ill. App. 379; *State*

*v. Diskin,* 34 La. Ann. 919, 44 Am. Rep. 448; *The People v. Reagle,* 60 Barb. [N. Y.] 527; *Cluverius v. The Commonwealth,* 81 Va. 787; *State v. Cason,* 41 S. C. 531, 19 S. E. 918; *State v. Bell,* 81 N. C. 591; *State v. Vaughan,* 23 Nev. 103, 43 Pac. 193; 1 Bishop's New Crim. Law, § 1039.)

There is a contention that the statute prescribes the only grounds which justify the discharge of a jury from rendering a verdict, and that the ground upon which the discharge was based in the present instance is not one of those enumerated in the statute. In behalf of the state it is plausibly argued that the statute does not undertake to specify all of the instances which would justify the discharge of a jury; that under the constitutional provision as to jeopardy, and the common-law rules in vogue when it was adopted, a jury may be discharged not only for reasons named in the statute but whenever it appears to the court that there is a manifest necessity for the act or that the ends of justice would otherwise be defeated. However that may be, the grounds specified in the statute appear to be sufficient to include the one upon which the court based its ruling in this case. It provides:

"The jury may be discharged by the court on account of the sickness of a juror, or other accident or calamity requiring their discharge, or by consent of both parties, or after they have been kept together until it satisfactorily appears that there is no probability of their agreeing." (Gen. Stat. 1901, § 4728.)

The word "accident," as used in the section, fairly admits of an interpretation covering the occurrence in question. It is variously defined as an undesigned contingency; a happening without intentional causation; that which exists or occurs abnormally; something unusual or phenomenal; an uncommon occurrence. The discovery and disclosure by the juror of his unfitness to sit in the case was an unexpected and unusual happening. It could not have been anticipated by the court or counsel. His answers on his *voir dire* exam-

ination did not develop the disqualification, and apparently the juror did not learn the nature of the case sufficiently to recall the prejudice which he had in cases of this character. It was a contingency which could not have been foreseen or well avoided by any one connected with the trial, unless it was the juror himself, and his examination does not betray any dishonesty of purpose. It therefore appears to have been an accidental occurrence—one which showed a manifest necessity for the discharge of that jury and the impaneling of one which could render a just and impartial verdict.

The sufficiency of the inquiry and of the finding of a necessity for the discharge is challenged. To warrant a discharge it has been decided that there must be, "first, an absolute necessity for such discharge; second, the court must make inquiry and find and determine that such necessity existed at the time of the discharge; and, third, the essential facts as to such necessity and the finding of the court thereon must be made a matter of record; or the defendant may successfully plead former jeopardy when placed on trial on the same charge." (*The State v. Allen,* 59 Kan. 758, 761, 54 Pac. 1060.) The particular contention here is that the statement made by this juror was not upon oath, and that the question of the necessity for the discharge was therefore not heard and determined by judicial methods. There is little room for this contention. In the preliminary part of the trial this juror was sworn to make true answers in response to questions as to his qualifications as a juror. It was not necessary that this juror should be resworn each time that he was called upon to answer questions as to his qualifications during the trial. The obligation and virtue of the oath remained with him, and the inquiry in question was made under it. Aside from that, he had taken an oath well and truly to try the case. The court made a finding of the necessity for a discharge of the jury. The

facts brought out in the inquiry, as well as the findings of the court, were made a matter of record, thus complying with the rule stated in *The State v. Allen, supra*.

The court correctly sustained the demurrer to the plea of former jeopardy, and its judgment is affirmed.