Green v. State.

CHARLIE GREEN *v*. THE STATE.*

(*Knoxville*.  September Term, 1922.)

1. CRIMINAL LAW.  Assignment not appearing in motion for new trial not considered.

 An assignment that the jurors in fact disagreed and were finally brought to an agreement by improper instructions cannot be inquired into in the reviewing court, where not assigned as ground of motion for new trial.  (*Post, pp*. 301-303.)

2. CRIMINAL LAW.  Motion for new trial, coupled with motion in arrest of-judgment, waived.

 A motion for new trial, coupled with a motion in arrest of judgment, was waived.  (*Post, pp*. 301-303.)

 Acts cited and construed: Acts 1897, ch. 106.

 Case cited and approved: Palmer v. State, 121 Tenn., 489.

3. CRIMINAL LAW.  Double ''jeopardy'' defined.

 An accused is in "jeopardy" within the meaning of the Fifth Amendment to the federal Constitution and Constitution, article 1, section 10, whenever he is .put to trial in a court of competent jurisdiction with a valid indictment and the plea thereto, has a jury sworn upon an issue to make deliverance, and the jury is charged with the deliverance of the accused when he has been placed in their hands for tral; that is, when the jury is sworn to try the issue upon the indictment and the plea thereto, and before the reading of the indictment or the introduction of testimon.. (*Post, pp*. 303-312.)

4. CRIMINAL LAW.  Court may discharge juror without working acquittal.

 Accused was not twice put in jeopardy under Constitution, article 1, section 10, and the Fifth Amendment to the federal Constitution,

*On effect of discharge of jury upon discovery of prejudice, disqualification, or misconduct of one or more of their number, to sustain a plea of former jeopardy see notes 14 L. R. A. (N. S.), 548 and L. R. A., 1916E, 1273.

Green v. State.

where the court discharged a juror, because he said that he would not punish any one for crime, and another juror was selected and the accused tried without his consent. (*Post, pp.* 303-312.)

Cases cited and approved: Ward v. State, 20 Tenn., 260; Tommason v State, 112 Tenn., 596; Simmons v. United States, 142 U. S., 148; Logan v. U. S., 144 U. S., 263; Thompson v. U. S., 155 U. S., 271; State v. Connor, 45 Tenn., 313; Draper v. State, 63 Tenn., 253; Cartwright v. State, 80 Tenn., 628; Hamilton v. State, 101 Tenn., 419; Walker v. State, 118 Tenn., 375; Mahala v. State, 18 Tenn., 532; Brakefield v. State, 33 Tenn., 218.

Cases cited and distinguished: State v. Waterhouse, 8 Tenn., 279; Turner v. State, 128 Tenn., 27; Fletcher v. State, 25 Tenn., 249; Ray v. State, 108 Tenn., 282; State v. Hansford, 76 Kan., 678.

5. **JURY.** Juror with religious scruples properly discharged.

Where a juror, after being sworn, arose from his place in the box and stated that he did not believe that a Christian should have anything to do with punishing people, and that he would not convict the accused, but would let God punish him, there developed a situation where it was entirely impossible to secure a verdict, and court properly discharged the juror and had another one selected. (*Post, pp.* 312-314.)

Cases cited and distinguished: Simmons v. U. S., 142 U. S., 148; Case of Thompson, 155 U. S., 271.

FROM BLEDSOE.

Error to the Circuit Court of Bledsoe County.—HON. J. T. RAULSTON, Judge.

R. B. SCHOOLFIELD, for appellant.

WM. H. SWIGGART, JR., Assistant Attorney-General, for the State.

Green v. State.

MR. L. D. SMITH delivered the opinion of the Court.

The plaintiff was convicted of the offense of knowingly, willfully, and maliciously cutting, for the purpose of marketing, timber upon the lands of another, without the owner's consent, in violation of chapter 106 of the Acts of 1897 (Shanon's Code, section 6503a1).

Error in the judgment of conviction is assigned here upon two grounds. In one assignment it is complained that the jurors in fact disagreed in the verdict, and that the jury were finally brought to an agreement by improper instructions from the court. The jury after consideration reported they could not agree, and, upon being asked by the court whether they disagreed upon the law or the facts, replied "Upon the facts." The court then inquired of the parties whether they would agree for the witnesses to again be heard; the defendant declined. Thereupon the court directed the district attorney-general to state his insistence upon certain testimony. The defendant was given a similar opportunity, and he replied through his counsel that he understood the matter just the opposite from the attorney-general, but objected to a discussion thereof before the jury. Thereupon the jury retired and in a short time returned a verdict of guilty.

This assignment cannot be inquired into here. It could only form the basis for a new trial. While the record shows that a motion for new trial was made, it does not appear that it was based upon this particular matter. The record also discloses that a motion for new trial was coupled with a motion in arrest of judgment. Thereby the motion for new trial was waived. *Palmer v. State,* 121 Tenn., 489, 118 S. W. 1022.

The other assignment of error is to the effect that the plaintiff in error was twice placed in jeopardy. When the facts constituting the basis of this contention developed in the trial, the plaintiff in error moved the court for a judgment of acquittal and discharge. The motion was overruled, and the trial of the plaintiff proceeded with, resulting in his conviction. We consider this sufficient to raise the question presented on its merits. The facts reflecting upon this question as they appear from the bill of exceptions are these: The jury was regularly selected, and among other jurors selected was one Thomas Pearson. Examination of the jurors upon *voir dire* developed that they were good and lawful men. The record recites:

"Said jury were then accepted by the State and the defendant to try the issues joined in the case, and the court ordered the jury sworn, which was done. Defendant entered his plea of not guilty to the indictment. After the jury was sworn, one of the jury, to-wit, Thomas Pearson, arose from his place in the box and addressed the court and said, 'Judge, I don't [want] to sit in this case as a juror,' whereupon the court inquired, 'Why?' The juror said, 'I don't believe it is my duty to punish anybody for committing a crime. I don't believe that a Christian should have anything to do with punishing people, for that is God's business. If people commit crime, let God punish them.' Whereupon the court inquired, 'Do you mean to say that if the proof showed the man guilty as provided by law, that you would not convict him?' The juror said, 'That's right; let God punish him, and let the wicked punish the wicked.' Thereupon the court held that the juror was mentally incompetent to sit as a juror in the trial of a criminal case, and discharged this juror from

the jury, and other jurors were drawn as provided by law until another good and lawful juror who was accepted by both sides was substituted in place of the one who had been discharged, and the jury was again sworn in the manner provided by law, and defendant thereupon excepted to the discharge of the juror as aforesaid, and moved the court that he be discharged, which motion was overruled by the court, and the trial proceeded in due and legal form."

The contention of the plaintiff in error is based upon section 10 of the Declaration of Rights, found in article 1 of our Constitution, that "no person shall, for the same offense, be twice put in jeopardy of life or limb." This provision of our Constitution comes to us by the way of the Fifth Amendment to the federal Constitution from the common law.

In its interpretation the courts have universally shown a determined purpose to protect the citizen against oppression and prosecution, even though thereby guilty persons might find a safe avenue of escape from just punishment.

An accused is in jeopardy, within the meaning of this provision of the Constitution, whenever he is put to trial in a court of competent jurisdiction, with a valid indictment and the plea thereto, has a jury sworn upon an issue to make deliverance, and the jury is charged with the deliverance of the accused, when he has been placed in the hands of the jury for trial; that is, when the jury is sworn to try the issue upon the indictment and the plea thereto, and before the reading of the indictment or the introduction of testimony. *Ward* v. *State,* 1 Humph., 260; *Tommason* v. *State,* 112 Tenn., 596, 79 S. W., 802.

While the courts have interpreted this provision of the Constitution with a view to the protection of the accused, they have not adhered to the literal meaning of the words. This is necessarily so, because, in the very nature of things, by reason of exigencies which arise in the progress of trials, the ends of justice would be defeated. So many proper exceptions to the general rule have, from the very beginning of its application in this country, and even before that in England, been taken as a part of the rule itself, and have been applied in cases of extreme absolute or manifest necessities, or when the ends of public justice might otherwise be defeated.

In the case of *United States* v. *Perez*, the prisoner was on trial for capital offense, and the jury, being unable to agree, were discharged by the court from giving any verdict, and without the consent of the prisoner. The prisoner, upon this claimed his discharge as of right under the provisions of the federal Constitution which protected him from being put in jeopardy twice for the same offense. It was held that these facts constituted no legal bar to another trial; that the prisoner had not been convicted or acquitted, and might again be put upon his defense. The court said:

"We think, that in all cases of this nature, the law has invested courts of justice with the authority to discharge a jury from giving any verdict, whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated. They are to exercise a sound discretion on the subject; and it is impossible to define all the circumstances, which would render it proper to interfere. To be sure, the power ought to be used with

the greatest caution, under urgent circumstances, and for very plain and obvious causes; and in capital cases especially, courts should be extremely careful how they interfere with any of the chances of life, in favor of the prisoner. But, after all, they have the right to order the discharge; and the security which the public have for the faithful, sound and conscientious exercise of this discretion, rests, in this, as in other cases, upon the responsibility of the judges, under their oaths of office." 9 Wheat., 579, 6 L. Ed., 165.

The court recognized in this case that there was diversity of opinion in practice on this subject in the American courts, and an examination of our own cases shows the court was slow at first to acquiesce in this interpretation by the supreme court of the United States. But, from the very beginning, the court has yielded to the principle announced in the Perez case.

In *State* v. *Waterhouse,* Mart. & Y., 279, the jury, after having been confined together for four days, reported that it would be impossible for them ever to agree. The trial court thereupon discharged the jury and ordered a mistrial against the consent of the prisoner, and it was contended that this operated as an acquittal and entitled the prisoner to a final discharge. Judge CRABB, speaking for the court, said:

"According to the common acceptation of the expression, an individual would certainly be put in jeopardy, or, in other words, in danger, when arraigned before the proper tribunal, placed upon his trial, and a jury actually sworn to pronounce upon his innocence or guilt. But for a long course of judicial opinion to the contrary, I should be at a loss to attach a different meaning to the expression, and

147 Tenn.—20

might feel myself bound to hold, that a second jury cannot be impaneled to try a citizen for a felony after he has been once jeopardized or endangered, by a submission of his cause to a competent court and a jury, upon a valid indictment. A fear, that the power in question, would sometimes be exercised, for the purposes of oppression and persecution, would make me hesitate long before I could consent to abandon a construction, which would seem to be most consonant with the meaning of the words, and withal, most favorable to life and liberty."

The opinion then refers to the decisions of Massachusetts, New York, and the United States as constituting a weight of a coincident adjudication which could not, with propriety, be resisted. Referring particularly to the decision of the supreme court of the United States in the Perez case and other cases, Judge CRABB said:

"The supreme court of the United States, fitted more than any other tribunal, from the necessary habits and researches of its members, to decide upon American constitutional law, have, without, so far as I can discover, a dissenting voice, held, that a court, in the exercise of a sound discretion, may discharge a jury, even in a capital case; and that the defendant may be again tried."

Mr. Justice CATRON in the same case refers to a previous decision, which was unreported, in which the same interpretation has been placed upon this constitutional provision. He, in referring to the influence of the decisions of the supreme court of the United States, upon the judgment of the court in the case then under consideration, said:

"That the provision in the Constitution of the United States, is binding entirely upon all the State courts in the

Union, and secures the privilege of not being twice put in jeopardy, to every citizen of every state, notwithstanding the State Constitution may have no such provision, cannot be denied.  It is the paramount law of every State, over the Constitution and laws of the States; and although our own Constitution has a similar provision, we did not feel ourselves warranted in giving it a construction different from that given to the Constitution of the United States, by the tribunal possessing the power (and of pre-eminent qualifications) to fix the construction of that instrument."

Thus it will be seen that it was early in judicial history established that an accused might be put upon his trial a second time under conditions of necessity, and that necessarily the trial court was clothed with the exercise of a sound discretion in determining whether the necessity existed.  This rule has been followed in numerous cases decided by the supreme court of the United States.  *Simmons* v. *United States,* 142 U. S., 148, 12 Sup. Ct., 171, 35 L. Ed., 968; *Logan* v. *U. S.,* 144 U. S., 263, 12 Sup. Ct., 617, 36 L. Ed., 429; *Thompson* v. *U. S.,* 155 U. S. 271, 15 Sup. Ct., 73, 39 L. Ed., 146.

The general modern rule is that the court may discharge a juror without working an acquittal of the defendant in any case, where the ends of justice, under the circumstances, would otherwise be defeated.  8 R. C. L., p. 153; 16 R. C. L., p. 319.

Our own decisions disclose the tendency to make exceptions to the general rule only in cases of necessity, and have recognized no discretion in the action of the trial judges beyond the limits of actual necessity.  The discharge of a juror for causes *propter defectum* has by this court universally been held as placing the accused in

jeopardy, entitling him to be discharged. *Ward* v. *State,* 1 Humph., 253; *State* v. *Connor,* 5 Cold., 313; *Draper* v. *State,* 4 Baxt., 253; *Cartwright* v. *State,* 12 Lea, 628; *Hamilton* v. *State,* 101 Tenn., 419, 47 S. W., 695; *Tommason* v. *State,* 112 Tenn., 600, 79 S. W., 802; *Walker* v. *State,* 118 Tenn., 375, 99 S. W., 366.

In *Tommason* v. *State,* supra, a number of cases on this subject are reviewed. In that case it developed that one of the jurors was related to the defendant, and another was not a resident of the county a sufficient time to render him competent to sit as a juror. They were discharged over the defendant's objection, and thereupon he pleaded twice in jeopardy.

It is pointed out in the opinions of the supreme court that in *Mahala* v. *State,* 10 Yerg., 532, 31 Am. Dec., 591, it had been held that the jury could not be discharged without the consent of the prisoner, unless there is an actual necessity therefor, and any discharge except for necessity would operate to discharge him, and that it was further held that the cases of necessity which would authorize such discharge are: First, when the court is compelled by law to be adjourned before the jury can agree on the verdict; secondly, when the prisoner by his own misconduct places it out of the power of the jury to investigate his case, or by the visitation of providence prevent their being able to attend his trial; and, third, when there is no possibility for the jury to agree upon and return a verdict. And so it was held that the action of the trial court in discharging the jurors for the causes mentioned put him in jeopardy and entitled him to acquittal.

So far as we are advised, no case has heretofore been passed upon on all fours with the question involved here.

It is in accord with sound principle, and just and reasonable, that in the administration of justice some discretion must be left with the trial judge in determining what constitutes a necessity in the discharge of a juror; whether we go to the extent of saying that any cause which has a tendency to prevent the administration of justice, or whether we limit his discretion to that class of cases where the verdict itself would be vitiated, or as a matter of law it would have to be set aside. We are to deal with the practical question whether or not the facts of this case bring it within any proper exceptions to the general rule. We have seen that it has been held by the supreme court of the United States where it developed that a juror was prejudiced against the defendant, he might be discharged without affording to the defendant the benefit of the plea of twice in jeopardy. A distinction is clearly recognized in our cases between causes *propter defectum* and causes which show that the juror had prejudged the case, or who by virtue of his state of mind could not, or would not, in fact pass upon the guilt or innocence of the accused. *Cartwright* v. *State*, 12 Lea, 620; *Brakefield* v. *State*, 1 Sneed, 218.

It is true that in the Brakefield case the question arose upon a motion for a new trial. It appears that after the trial it developed that one of the jurors had stated before he was taken upon the jury that the accused ought to be hung, thus showing prejudgment. In that case, however, the question was not merely one which went to the competency of the juror, but was one which had the effect to nullify the verdict of the jury; it being manifest that the verdict was not based upon the law and the evidence, but

influenced by a prejudgment of the case independent of the facts.

In the case of *Turner* v. *State,* 128 Tenn., 27, 157 S. W., 67 Ann. Cas., 1914D, 693, a new trial was granted because the trial judge accepted a juror, who upon his *voir dire* examination had stated that he was in favor of the enforcement of prohibition laws in the country, but not in town. The decision of the court was based upon the conclusion that the juror was not a good and lawful man. The court said:

"The juror should be as impartial as the judge himself.

"These are the requirements of the common law, as well as of our modern statutes and decisions, and by our Constitution the duty is imposed on this court, and upon all of the judges of the State, to see to it that trial by jury shall remain inviolate, . . . and that men shall be tried by impartial juries."

The conclusion was that the juror, such as the one in question, had not the qualification of impartiality, and was therefore not competent to sit on a case involving the crime as to which he confessed such principles of conduct. The court in that case directed attention to two other cases, illustrating the principle applied. *Fletcher* v. *State,* 6 Humph., 249, and *Ray* v. *State,* 108 Tenn., 282, 67 S. W., 553. In the latter case the juror, being asked if he had any conscientious or religious scruples against capital punishment, replied that he did not believe in hanging, "The law is wrong; I don't believe in hanging." The juror was peremptorily challenged by the State, and a new trial was sought because the practice of making inquiries of jurors was highly prejudicial. With respect to these cases, the court said:

"In the first of these cases no one can doubt that an affirmative answer by a proposed juror to the inquiry propounded would have discovered his incompetency to sit in the trial of the case. So in the second instance the answer of the venireman disclosed his incompetency to sit as a juror on the trial of a capital case. In neither instance could the juror be considered impartial, or a 'lawful,' or law-abiding, man."

Such qualifications all jurors must possess in order that the courts may give effect to the verdicts of juries.

A case dealing with a situation very similar to the one under consideration is that of *State* v. *Hansford*, 76 Kan., 678, 92 Pac., 551, 14 L. R. A. (N. S.), 548. During the trial of that case, after a witness had been examined, one of the jurors made the statement to the court: "After hearing the plaintiff's testimony yesterday there was refreshed in my mind a circumstance similar to the one that we are trying, or have been trying here, and it has put my mind in such a shape that I am not sure whether I could give both the state and the defendant the same trial, and I ask to be excused."

The juror was excused. The court's action was made the basis of the motion to discharge the accused, because he was thereby placed twice in jeopardy. It was conceded in that case that the rule was universal that a juror might be discharged for sickness or other physical disqualifications which unfit him for the performance of his duties, and that insanity or mental disability would equally disqualify him. Likewise, it is established in our jurisdiction that such disqualification would be within the interpretation of the Constitution which permits the discharge of a juror for necessary causes. The court in that case said:

---

Green v. State.

---

"If the disqualification is such as would frustrate the ends of justice and prevent a lawful verdict the rights of the defendant, as well as the interests of the public, require the court to arrest the progress of the trial and start afresh with a legal and impartial jury. If during the trial the court should learn of a corrupt interference with a juror or that through some outside sinister influence one of the jury had agreed to vote for conviction regardless of the testimony it would be conceded that a pressing necessity for the discharge of the jury had occurred.

"When a juror, as in this case, confesses to an incurable prejudice which disqualifies him from exercising the functions of a juror or acting impartially as between the parties a continuance of the trial would be a farce, as the object of a trial—a fair and impartial verdict—becomes an impossibility. After learning of this situation from a judicial inquiry nothing was left for the court except to discharge that jury and impanel another." .

The trial court based its action upon the conclusion that the facts developed by the juror rendered him mentally incompetent, and it is insisted by the attorney-general for the State that the case should be treated as if the insanity of the juror had developed. As we understand the juror's mental attitude, we doubt if it could be said that he is disqualified for mental deficiency or insanity. The juror evidently entertained a religious scruple against acting as a judge or juror and in passing judgment of conviction against those charged with crime, but, be that as it may, whether he was a competent juror or not, it is quite sure that his mental attitude was such that he would and could not determine the question of the defendant's guilt or innocence, if it involved his conviction. In other

words, he declined to be a party to the verdict. He would be a mere nonentity, and either there would have been no verdict at all or else it would have been the verdict of eleven men merely acquiesced in by the particular juror. A legal jury must be composed of twelve men, each of whom must pass upon and determine the guilt or innocence of the accused. If the man had been insane, he could not have participated in the verdict; his attitude here was such as that he would not have participated in the verdict, and there would have been either no verdict, or an unlawful one, which would necessarily have to be set aside if unfavorable to the defendant. Not only is the defendant entitled to the unanimous vote of all the jurors before he can be convicted, but the state is entitled to have the unanimous verdict of twelve jurors before he is acquitted. There was thus developed a situation wherein it was entirely impossible to secure a verdict, and we have presented a case where the discharge of a juror became a necessity in order to prevent a miscarriage in the administration of justice. Certainly this conclusion is entirely justified by the leading cases on the subject, especially of the supreme court of the United States, and fully meets the requirements of our own decisions and is in accordance with good sense and reason.

In the case of *Simmons* v. *U. S.,* 142 U. S., 148, 12 Sup. Ct., 171, 35 L. Ed., 968, supra, the supreme court said:

"When it is made to appear to the court during the trial of a criminal case that, either by reason of facts existing when the jurors were sworn, but not then disclosed or known to the court, or by reason of outside influences brought to bear on the jury pending the trial, the jurors or any of them are subject to such bias or prejudice

as not to stand impartial between the government and the accused, the jury may be discharged, and the defendant put on trial by another jury; and the defendant is not thereby twice put in jeopardy, within the meaning of the Fifth Amendment of the Constitution of the United States."

In the case of *Thompson*, 155 U. S., 271, 15 Sup. Ct., 73, 39 L. Ed., 146, supra, in which it developed that one of the jury had been a member of the grand jury that found the indictment and was discharged for that reason, the court said:

"Courts of justice are vested with the authority to discharge a jury from giving any verdict, whenever in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated, and to order a trial by another jury; and that the defendant is not thereby twice put in jeopardy."

For the same reasons, another jury is necessary where it appears that one of the jury originally selected, by reason of conscientious scruples or mental attitude will not permit his mind to pass upon facts of the case, or to reach a conclusion of conviction which will result in the punishment of the accused, and therefore the constitutional provision against being put twice in jeopardy cannot be invoked here to relieve him from the conviction based upon trial by another jury.

The assignment of error raising this question will have to be overruled, and judgment of the circuit court affirmed.