**The People of the State of Illinois, Defendant in Error, v. Mike Simos et al., Plaintiffs in Error.**

**Gen. No. 34,505.**

Heard in the first division of this court for the first district at the October term, 1930. Opinion filed December 1, 1930.

WM. SCOTT STEWART, for plaintiffs in error.

JOHN A. SWANSON, State's Attorney, for defendant in error; EDWARD E. WILSON, HENRY T. CHACE, JR., and OTHO S. FASIG, Assistant State's Attorneys, of counsel.

MR. JUSTICE McSURELY delivered the opinion of the court.

Defendants were charged with conspiracy to suborn perjury by causing one Dorothy Fletcher to testify falsely to a material issue in a personal injury suit instituted by Mike Simos, one of the defendants, against the Chicago Rapid Transit Company in the circuit court of Cook county. They pleaded not guilty but upon trial the jury found each defendant guilty as charged. The punishment of the defendant Mike Simos was fixed at imprisonment in the county jail for nine months; of the defendant Anthony Anton at im-

prisonment in the county jail for one year; and of the defendant Pericles Caloedas at imprisonment in the penitentiary. Defendants seek a reversal. Counsel appearing here did not represent defendants in the trial court.

Defendants' brief contains some 25 points, but only four points are argued. Points contained in the brief but not argued may be considered waived. *Harding v. People,* 202 Ill. 122; and Rule 19 of this court.

It is first argued that, when defendants were tried before Judge John J. Sullivan, which is the instant trial, they were not permitted to introduce evidence of former jeopardy. The brief gives us virtually no information as to the prior proceedings but makes only a general statement that at a former trial before Judge Taylor in the criminal court, after a jury had been selected to try the defendants upon the same indictment and hearing of testimony had begun, a juror was withdrawn upon motion of the State's Attorney; that in the instant trial defendants sought to prove this, but Judge Sullivan refused to admit the evidence. This meager statement in the brief does not help us to arrive at any considered judgment as to whether this ruling was right or wrong. As the burden is upon the one claiming erroneous exclusion of evidence to show wherein it is erroneous, in the absence of such a showing we should hold that no reversible error in this regard had been made to appear.

The bill of exceptions shows that defendant Anton was asked whether he was present in the court room of Judge Taylor when the case of People against these same defendants was on trial, to which the witness answered that he was present. He was then asked: "Was there any evidence introduced in that case?" Objection was made by the State's Attorney. Counsel and court then retired to the chambers of the judge and the attorney for defendants made an offer as follows: "I offer to prove that the defendants in this case were placed on trial on the same indictments,

that a jury was selected and sworn to try the issues, and the State introduced the testimony of several witnesses, some of whom have testified at this hearing, and that during the cross-examination of Dorothy Fletcher, without any fault of any of the defendants, on the motion of the State's Attorney, Judge Taylor granted leave to the Assistant State's Attorney to withdraw a juror.''

The presumption is that Judge Taylor properly exercised the discretion with which the law empowered him and that he declared a mistrial for good and sufficient reasons. The offer by defendants discloses nothing whatever tending to overcome or even contradict this presumption. Many incidents might happen upon a trial which would justify the court in declaring a mistrial and discharging the jury. Illness of a juror, misconduct of a witness or a spectator or an attorney and similar occurrences might take place without the fault of a defendant and yet be sufficient ground for declaring a mistrial. The offer of proof does not tend to prove any impropriety in discharging the jury by Judge Taylor, and Judge Sullivan's ruling sustaining the objection to the offer of proof was proper.

The discharge of a jury even without the consent of the accused does not necessarily bar a second trial for the same offense on the ground of former jeopardy. *Dreyer v. People,* 188 Ill. 40; *People v. Peplos,* 340 Ill. 27; and cases there cited. The general rule is that in cases of this nature the courts of justice have the authority to discharge a jury from giving a verdict whenever, in their opinion, there is a manifest necessity for such an act or the ends of public justice would otherwise be defeated. *United States v. Perez,* 9 Wheaton 579; vol. 8 R. C. L. 153–156; *Simmons v. United States,* 142 U. S. 148; *State v. Bell,* 81 N. C. 591. It is not necessary for the trial court to find that there was any illegal or improper attempt to tamper with the jury, but there is a sufficient basis for the

court's decision where the act is suspicious and may bar a construction consistent with a purpose to unduly influence the administration of justice. *People v. Diamond,* 231 Mich. 484; *State v. Hansford,* 76 Kan. 678. Neither is it necessary to find that the defendant was guilty of any misconduct. *State v. Wiseman,* 68 N. C. 203; *State v. Washington,* 89 N. C. 535.

There is incorporated in the record certain pleadings which set forth a stenographic report of the occurrence before Judge Taylor, and in the brief for the People the propriety of Judge Taylor's action is argued extensively. We do not think it necessary for us to discuss this, especially as the attorney for the defendants contends that these pleadings are not properly in the record and refuses to discuss them. However, we have examined the facts presented by these pleadings and are of the opinion that not only was Judge Taylor fully justified in declaring a mistrial, but that the defendants consented to this and immediately after the ruling of the court moved that the case be transferred to the Chief Justice for reassignment. Where a defendant consents to the discharge of a jury, he waives objection and cannot upon a subsequent trial plead former jeopardy. *Oborn v. State,* 143 Wis. 249; *Riley v. Commonwealth,* 190 Ky. 204; *Franklin v. State,* 149 Ark. 546; *Kingen v. State,* 46 Ind. 132; vol. 1 Bishop on Criminal Law (9th ed.) 739.

Defendants next claim that the court improperly admitted evidence of other like crimes by the defendants or some of them. No persuasive argument to support this point is made. It is well established that, where the issue whether one is guilty of a specific overt act of conspiracy is made, it is competent to give in evidence other overt acts of conspiracy which include or are dependent upon or constitute a part of the particular act for which the defendant is tried. *McDonald v. People,* 126 Ill. 150; vol. 8 R. C. L. 199–203; *Williamson v. United States,* 207 U. S. 425; *People v.*

*Duffy,* 212 N. Y. 57. In this latter case evidence of other acts was stated to be competent as showing that the wrong doings "were part of one continued series or systems of events." See also *Shea v. United States,* 236 Fed. 97; *Card v. State,* 109 Ind. 415; *DuBois v. People,* 200 Ill. 157, where it was held that proof of similar transactions practiced by the defendant upon others was held admissible upon a trial for obtaining money by means of a confidence game to show guilty knowledge on the part of the defendant.

It is next claimed to be prejudicial to the interests of the defendant Caloedas that the court appointed Mr. A. A. Pantelis as his attorney. Mr. Pantelis had entered his appearance many months before for the defendants Simos and Anton. At the commencement of the trial, after the jury was sworn, defendant Caloedas for the first time informed the court that he desired Mr. William Scott Stewart to represent him as his attorney in the case and in response to an inquiry told the court that he had employed Mr. Stewart as his attorney only the preceding night, as Mr. Harrington who had previously represented him had since withdrawn. The court thereupon appointed Mr. Pantelis, who represented the other two defendants, to represent Caloedas also and stated that he would not continue the case for Mr. Stewart at this late day. Mr. Pantelis has appeared at the prior proceeding and was thoroughly familiar with the case. The instant trial took place more than seven months after the prior proceeding before Judge Taylor. Under the circumstances we think there was no abuse of discretion for the trial court to refuse to continue the case and to appoint Pantelis to represent defendant Caloedas along with the other defendants. The interests and the defenses of the several defendants were identical. There is no suggestion that Pantelis did not competently represent all the defendants.

The last point presented in defendants' brief is that the verdict is contrary to the weight of the evidence. The brief does very little more than make this statement. There is only the most sketchy outline of the evidence. The purpose of a brief is to convince the reviewing court and a mere assertion is not sufficient.

The evidence tended to show that in April, 1928, the defendant Caloedas, pursuant to a telephone appointment, went to the home of Dorothy Fletcher and asked her to testify in a personal injury suit instituted against the elevated railroad by one of his friends; he told her they needed another witness, as they did not have sufficient evidence to prove the case, and he asked her to go with him to their lawyer. Following this, Caloedas called at Dorothy Fletcher's home and took her in a cab to number 7 South Dearborn Street, Chicago, where they met Paul Sofias and Mike Bournazious. Sofias told Miss Fletcher that he had been hurt in an accident and would like her to say that she was with him in the accident. Dorothy Fletcher went with them to look at the place of the alleged accident and the manner in which the accident happened was rehearsed. In September, 1928, Caloedas went to Miss Fletcher's home and told her that the case was coming up the first of the next week and that she would have to go down in the morning to see the lawyer. The next morning she and Caloedas went to the office of an attorney, where they met the defendants Anton and Simos, to whom she was introduced. She questioned whether they were the men for whom she was to testify, but Caloedas told her that this was another case; that another accident had happened, and Anton told her that he had been in an accident on May 6, 1927, at the VanBuren and Franklin Street elevated station in Chicago, and that she was to testify in this latter case. She was then told that two elevated cars had collided and that Simos was supposed to have been hurt and

Anton was going to testify in regard to helping him. Miss Fletcher then told them she would have to know more about the accident and went with them to the VanBuren and Franklin Street station, where the accident and the manner in which it happened was rehearsed. Simos told her to say, when testifying, that she had given him a card containing her telephone number. They returned to the attorney's office and she was cautioned not to say anything to the attorney about having been asked to testify for Simos. She told the attorney that she did not understand exactly about the accident, so the attorney took her again to the elevated station, accompanied by Caloedas, Anton and Simos, and again the accident was explained to her. The following week she again met the defendants and was told to keep her story straight, as it was important that her story should correspond with theirs, and again they went over the testimony that they would give on the trial. When the case came on for trial before Judge Hood in the circuit court of Cook county, Miss Fletcher, Simos and Anton gave testimony as to the happening of the accident and the personal injuries sustained by Simos, in accordance with their previous arrangement.

Upon the trial of the instant criminal case Miss Fletcher testified that she had never been to the Van Buren and Franklin Street elevated station prior to the time that defendants Caloedas, Simos and Anton took her there and that she did not witness the accident and that she never saw Anton carry Simos up the platform, as she and Anton had theretofore testified. There was also evidence of other witnesses tending to show that, while on May 6, 1927, there was a collision between cars near the VanBuren and Franklin Street elevated station, they saw neither Simos nor Anton nor Dorothy Fletcher upon the trains or on the platform at the time. Both Simos and Anton testified as

to the collision and claimed that Simos was hurt. The evidence was that the collision was only slight, merely breaking a glass of the window of one of the cars and partially derailing one car. It is significant that Simos had known Caloedas for a number of years and that Caloedas was in the habit of recommending damage. suits to attorneys and also had a suit of his own for personal injuries against the street car company at the time he testified in the case at bar.

After considering this variant testimony, including the denials of the defendant, the jury could properly conclude that Simos was not injured in said accident and that his testimony as well as the corroborating testimony presented at the trial of his personal injury suit was false as the result of the conspiracy of defendants to suborn perjury. The jury was justified in finding the defendants guilty of the crime charged, and as there were no reversible errors occurring upon the trial, the judgment as to each defendant is affirmed.

*Affirmed.*

MATCHETT, P. J., and O'CONNOR, J., concur.