**Thelma J. RICKETTS, Plaintiff–Appellee,**

v.

**June CARTER, Defendant–Appellant.**

Supreme Court of Tennessee,
at Jackson.

March 25, 1996.

Timothy A. Ryan, III, Memphis, for Plaintiff–Appellee.

Reid Phillips, Michael L. Robb, John H. Dotson, Thomason, Hendrix, Harvey, Johnson & Mitchell, Memphis, for Defendant–Appellant.

## OPINION

DROWOTA, Justice.

In this personal injury case stemming from an automobile accident, the defendant, June Carter, appeals from the Court of Appeals' affirmance of the trial court's denial of her motion for new trial. This case presents the following issue for our determination: whether the trial court erred by refusing to inquire into a sworn juror's impartiality after that juror had been involved in automobile accident on her way to court, and had received injuries similar to those incurred by the plaintiff. We conclude that the trial court did err in refusing to so inquire, and we therefore reverse the judgment of the Court of Appeals and remand this case for a new trial.

### FACTS AND PROCEDURAL HISTORY

On January 8, 1989, Thelma Ricketts, the plaintiff, was a passenger in a car being driven by her husband, Jimmie Ricketts. As the Ricketts were proceeding across a bridge, a car approaching from the opposite

direction, driven by the defendant, June Carter, hit a patch of ice and spun out of control. Carter crashed into the Ricketts, destroying both vehicles. Thelma Ricketts received injuries to her throat, back, arm and neck from the collision.

The Ricketts subsequently brought a lawsuit against Carter, alleging that she was negligent in the operation of her car. The trial in this case began on September 27, 1993, and by the end of the following day, both sides had rested. The parties agreed to return the next day, September 29, to present closing arguments.

On the morning of September 29, one of the jurors, Amanda Smith, was involved in a car accident while enroute to the courthouse. Because this accident prevented Smith from reaching the courthouse at the scheduled time, the trial court asked the plaintiff's counsel if he would like to continue with eleven jurors. The plaintiff's counsel declined this invitation, preferring instead to wait for Smith's arrival. Upon Smith's arrival, defense counsel asked that the trial court inquire as to the circumstances of the accident, or alternatively, that defense counsel be allowed to do so. The following colloquy between the trial court and the defense counsel took place concerning this request:

Defense counsel: I need to voir dire her and get the circumstances, since we're trying the case.

The Court: What are you going to voir dire?

Defense counsel: One of the questions of the voir dire was—was she in an accident?

The Court: At the time that you asked it, she wasn't.

Defense Counsel: Well, now she has been in one before we get to decide this case.

The Court: You have got a choice. You go with 12 or you go with 11.

Defense Counsel: I don't have any choice.

The Court: I'm not going to let you voir dire. You don't have a right to voir dire anymore.

Defense Counsel: I am just saying I don't have a choice. He decides to go for 12. I might go for 11.

The Court: What I am saying is, she has been in an accident. If she can walk in here on crutches, or whatever, and discharge her duty, I am not going to let you voir dire her on what happened this morning.

Defense Counsel: I wouldn't think that would do any harm, because we don't know what the circumstances were, and that's something that we voir dired very carefully, about the circumstances of the accident.

The Court: What if the circumstances are such that you regretted asking her, what are you going to do then? Are you going to challenge her now? What power—what can you do?

Defense Counsel: I don't know what the circumstances are, but I think that it's—I would just submit to the Court that we at least be able to just ask about it to see what the circumstances were.

The Court: Your asking has to have some effect, Mr. Robb. You cannot now strike the juror, so what good does it do to ask?

Defense Counsel: I don't know that we can't strike her. I've never been in this situation before, to tell you the truth.

.    .    .    .    .

The Court: let's bring the juror out, just the one that was late coming.

.    .    .    .    .

The Court: Good morning, Ms. Smith. I understand that you were in an accident this morning.

Juror Smith: Yes sir.

The Court: Were you injured?

Juror Smith: No. It's just that my neck was hurting or is hurting. It still is.

The Court: Your leg is hurting?

Juror Smith: No, neck.

The Court: Your neck is hurting. This trial is expected to go on for the remainder of the day and maybe until tomorrow. Is there anything about your physical condition that would prevent you from concentrating on the case?

Juror Smith: No.

The Court: Are you sure?

Juror Smith: Uh-huh.

The Court: I'm going to ask you the same question again, because we asked all the jurors in the beginning, that we find no—is there anything about the accident that might prevent you from concentrating on this case?

Juror Smith: No sir.

The Court: Is there anything about anything that has occurred in the last—since we met yesterday, that would divert you time and attention from this case?

Juror Smith: No sir.

The Court: You went to the minor emergency room?

Juror Smith: I went to Methodist South off Elvis Presley.

The Court: All right. Did they find anything wrong?

Juror Smith: They just said that I just have some swelling and tomorrow I would be pretty sore. They gave me some kind of prescription to get filled. They said that I was okay.

The court: All right. Do you feel that you are okay?

Juror Smith: Uh-huh.

The Court: You do?

Juror Smith: Yes.

The Court: Okay.

(Whereupon, the juror left the courtroom.)

Defense Counsel: Could your Honor ask how the accident happened?

The Court: No, I am not interested in how the accident happened. I am not interested in that. I'm only interested in whether or not she can discharge her duties as a juror to the two parties. And I have asked enough questions to satisfy myself that she is under no physical disabilities, no mental disability. Her mind is not on that. It's not my business about what happened. I'm not going to ask her, and I'm not going to allow you to ask her.

Defense Counsel: The problem that I have is that obviously we have a case here that involves neck injuries.

. . . . .

The Court: You picked her as a juror; you got her.

Defense Counsel: I know I picked her, but I didn't pick her under these circumstances.

. . . . .

The Court: I am through with this issue; that's all.

After this exchange the case was submitted to the jury, and it returned a verdict in favor of the plaintiff. The defendant then moved for a new trial, arguing that the trial court had erred in refusing to question Juror Smith about the accident in order to determine her ability to decide the case in an unbiased manner. The trial court denied this motion, and the defendant appealed to the Court of Appeals, which affirmed the judgment of the trial court. We granted the defendant's application for permission to appeal pursuant to Tenn.R.App.P. 11.

### ANALYSIS

We begin our analysis in this case by noting several undisputed, germane propositions of law. First, the Tennessee constitution provides that the right of trial by jury, as that right existed at common law, shall remain inviolate. Tenn. Const. Art. I, § 6. One of the primary aspects of this right is that all contested factual issues be determined by an unbiased, impartial jury. Indeed, as we stated in *Durham v. State*, 182 Tenn. 577, 188 S.W.2d 555, 558 (1945): "at the basis of our trial system stands a disinterested, unprejudiced jury as triers of fact, a body every member of which should be free from bias and prejudice ..." (quoting *International Agriculture Corp. v. Willette*, 120 Me. 423, 115 A. 170 (1921)). Moreover, while the right to jury trial has a special resonance in criminal matters, *see State v. Bobo*, 814 S.W.2d 353, 356–58 (Tenn.1991), it is well-settled that a party in a civil case also has the right to have the factual issues in the case determined by a fair and unbiased jury. *See Finks v. Gillum*, 38 Tenn.App. 304, 273 S.W.2d 722, 726 (1954) (plaintiff in personal injury action resulting from an automobile accident has constitutional right to have contested factual issues decided by an impartial jury); *Santi v. Duffey*, 40 Tenn.App. 237, 290 S.W.2d 884, 887 (1956) (plaintiff in a wrongful death action resulting from an automobile

accident has constitutional right to have contested factual issues determined by impartial jury). Finally, it is well-settled that Tennessee law requires the trial court to insure the impartiality of the jury by discharging jurors who are unqualified. Tenn.Code Ann. § 22–1–106 provides that:

> The court may discharge from service a grand or petit juror who does not possess the requisite qualifications, or who is exempt or disqualified from such service, or for any other reasonable cause, to be judged by the court. *That a state of mind exists on a juror's part* toward law enforcement or *which will prevent the juror from acting impartially shall constitute such cause.*

(Emphasis added.)

With these considerations in mind, we turn to the question presented here: should the trial court have examined Juror Smith about the circumstances of her accident in order to ascertain whether she could decide the case in a fair and unbiased manner? Initially, we have little doubt that such an inquiry is highly relevant, even crucial, to the goal of ferreting out bias and prejudice. Many courts, in both the criminal and civil context, have concluded that when a juror has been involved in a crime or accident similar to the one at issue in the litigation, the trial court must question the juror to determine if the involvement would preclude him or her from deciding the case in a fair and unbiased manner. For example,[1] in *State v. Brooks*, 868 P.2d 818 (Utah App.1994), a defendant on trial for burglary argued that the trial court erred by not removing for cause certain jurors who indicated that they had been burglary victims. In its analysis, the Utah Court of Appeals stated that:

> A question of potential bias arises when a prospective juror has been the victim of a similar crime. When such a question arises, the trial court must probe to determine whether the prospective juror is, in fact, impartial despite the past experience. This is generally accomplished by the trial

court simply asking if the juror can be impartial. If, after probing the prospective juror's state of mind, the trial court is satisfied that the juror can view and weigh the evidence impartially, the inquiry is at an end.

*Brooks,* 868 P.2d at 823 (citations omitted.)

In applying this rule to the facts of the case before it, the *Brooks* court noted that because three prospective jurors "indicated that they all had been victims of similar crimes, ... a question of bias was raised with respect to all three jurors." *Id.* The court concluded, however, that the trial court had discharged its duty of determining the jurors' impartiality by asking the following four questions:

> [1] If you or a member of your family were involved in a case such as the one before you, would you be willing to have your case or theirs tried by eight people in the same frame of mind as you are now in?
> [2] Possessing the state of mind that you have, is there anything that would prevent any of you from acting fairly and impartially without prejudice to the substantial rights of either party in this case?
> [3] Is there any reason known to any of you why you could not try the case fairly and impartially upon any evidence and without any bias for or against either party to the action?
> [4] From your answers, I understand that each of you individually now declares to me that you can listen attentively to the evidence, can apply the law to the facts which you may find to exist and can reach a verdict which is fair and impartial as to each party in this controversy. Are there any of you who for any reason feel that you cannot?

*Id.*

Similarly, in *Commonwealth v. Fulton,* 271 Pa.Super. 430, 413 A.2d 742 (1979), the Pennsylvania Superior Court considered the trial court's refusal to permit the defendant, on trial for rape, to ask prospective jurors whether they had been involved with a rape

---

1. Because jurors only rarely become involved in such crimes or accidents *after* they have been empaneled, nearly all of the cases concerning the duty to examine for impartiality—including those

cited herein—concern *prospective* jurors. These cases are cited only for the proposition that jurors must be examined as to their impartiality if they are involved in a similar crime or accident.

or other sexual crime. In concluding that the trial court's refusal to permit such questioning constituted reversible error, the *Fulton* court stated:

> We think it clear that a natural adjunct to the accused's right to probe for prejudice is the right to inquire into past victimization among the jurors of crimes similar to those with which the defendant is accused. Thus, a defendant charged with robbery has the right to ask the veniremen whether they or any member of their families have ever been the victim of robbery. Similarly, the accused, on trial for aggravated assault, may ask the potential jurors if they have been the victim of a crime in the nature of an assault.

*Fulton*, 413 A.2d at 743 (citations omitted.) *See also Davis v. State*, 333 Md. 27, 633 A.2d 867, 877 (1993) ("where parties identify an area of potential bias and properly request *voir dire* questions designed to ascertain jurors whose bias could interfere with their ability to fairly and impartially decide the issues, then the trial court has an obligation to ask those questions of the venire panel."); *United States v. Ramsey*, 726 F.2d 601, 604 (10th Cir.1984) ("[w]hen a party's suggestion that a jury is biased is not frivolous, the district court ordinarily should undertake an adequate inquiry into the questions of whether the bias actually existed and whether it was prejudicial."); *United States v. Cassel*, 668 F.2d 969 (8th Cir.1982) (trial court's refusal to ask venirepersons whether they had been a victim of a crime unjustified).

■ We agree with the reasoning of the above-cited cases: the trial court in either a civil or criminal case should examine jurors regarding their involvement in occurrences similar to those at issue in order to ferret out potential juror bias. Moreover, it is clear that the trial court here ran afoul of this generally-accepted rule. The questions it asked Juror Smith did not address the subject of bias, but were limited to ascertaining whether she was physically and mentally able to discharge her duties as a juror. Thus, it appears that the trial court erred in so limiting the questioning.

The plaintiff, while not disputing the validity of the general rule, nevertheless contends that it is not applicable to this case.' She argues that since the jury was already empaneled when the accident occurred, the trial court was justified in not questioning Juror Smith about the circumstances of the accident.

This position finds no support in Tennessee law. For example, in *Green v. State*, 147 Tenn. 299, 247 S.W. 84 (1923), a criminal case, the jury had been duly sworn when one of the jurors arose from his place in the jury box and informed the trial court that his religious faith forbade him from sitting in judgment of another human being. The trial court then asked the juror "Do you mean to say that if the proof showed the man guilty as provided by law, that you would not convict him?" The juror replied "That's right; let God punish him, and let the wicked punish the wicked." *Green*, 247 S.W. at 85. The trial court then discharged the juror and appointed an alternate in his place. The defendant excepted to this action, arguing that such action placed him in double jeopardy. This Court approved the action of the trial court, and in so doing quoted the following language from the Kansas Supreme Court:

> If during the trial the court should learn of a corrupt influence with a juror or that through some outside ... influence one of the jury had agreed to vote for conviction regardless of the testimony it would be conceded that a pressing necessity for the discharge of the jury had occurred.

> When a juror, as in this case, confesses to an incurable prejudice which disqualifies him from exercising the functions of a juror or acting impartially as between the parties, a continuance of the trial would be a farce, as the object of a trial—a fair and impartial verdict—becomes an impossibility. After learning of this situation by a judicial inquiry nothing was left for the court except to discharge that jury and empanel another.

*Green*, 247 S.W. at 87–88 (quoting *State v. Hansford*, 76 Kan. 678, 92 P. 551 (1907)).

■ As *Green* and other recent cases illustrate, see *Owen v. Arcata Graphics/Kingsport Press*, 813 S.W.2d 442, 447–48 (Tenn.

App.1990), a party has the right to challenge a juror for cause, on the basis of a lack of impartiality, *after the jury has been empaneled or even after the verdict has been rendered.* Therefore, the plaintiff's argument has no merit.

The plaintiff alternatively argues that since the evidence supporting the jury's verdict was overwhelming, the error committed by the trial court was harmless. We have, however, recently rejected this argument in the criminal context. In *State v. Bobo,* 814 S.W.2d 353 (Tenn.1991) (Drowota, J. dissenting), we declined to subject errors affecting the constitutional right to trial by jury to a harmless error analysis, concluding that "such violations are defects in the structure of the trial mechanism and defy analysis by harmless error standards." *Bobo,* 814 S.W.2d at 358. While we do not necessarily conclude that all errors impacting the right to trial by jury have the same effect in civil as in criminal cases, we decline to speculate as to what effect, if any, Juror Smith's involvement in the automobile accident had on the jury's deliberative process. Thus, we reject the plaintiff's request that we apply harmless error analysis here.

In summation, we hold that after a jury has been empaneled and a juror has been involved in an accident similar to that suffered by the plaintiff, the trial court should inquire into the juror's impartiality. Such an inquiry should be limited to issues or events that have occurred since the jury was empaneled. Therefore, because the trial court here failed to determine whether Juror Smith could weigh the evidence impartially, the judgment of the Court of Appeals is reversed and the case remanded for further proceedings in accordance with this opinion.

ANDERSON, C.J., and REID, BIRCH and WHITE, JJ., concur.