## CLARK *v.* STATE.

### (*Jackson*, April Term, 1936.)

Opinion filed May 2, 1936.

GALLOWAY & GALLOWAY, of Memphis, for plaintiff in error.

NAT TIPTON, of Nashville, for defendant in error.

MR. JUSTICE CHAMBLISS delivered the opinion of the Court.

Here on petition for *certiorari* to the criminal court of Shelby county, the question presented has invoked most painstaking consideration, because both of its novelty, and the plausibility of the appeal made to the court's sense of practical justice. Petitioner Clark, clerk of the city court of Memphis, was indicted and tried with three others, the city judge and two lawyers, on charges of embezzlement, larceny, etc. The trial began in June and ran to the middle of August. After deliberating for thirty-six hours, the jury came into court, on the 15th day of August, 1935, and the following occurred:

"The jury, aforesaid, reported to the Court on the morning of August 15th, 1935, that it was hopelessly hung and that it was both a moral and physical impossibility to agree on a verdict.

"The Court, in the absence of the jury, inquired of the defendants, who were personally present in court and represented by counsel, if they desired that the jury be held together ffor a longer period of time, to which respective counsel replied they did not. The jury being recalled to the court room was then polled by the Judge, each Juror being asked the specific question if he thought a verdict might be reached upon further deliberations, to which question each Juror replied in the negative.

"It appearing to the Court that the Jury, aforesaid, having had ample time upon which to consider the case and being of the opinion that it was both a moral and physical impossibility for them to agree on a verdict and that it is useless to hold them together for further deliberations,

"It is ordered by the Court that a juror be withdrawn (?) and a mistrial entered, which is accordingly done.

"Whereupon court adjourned until tomorrow morning at 9:30 o'clock."

The minutes next show the following entry on Saturday, August 17th, two days later:

"State of Tennessee

vs.

W. L. Clark

"Comes the defendant in above cause, by counsel of record and files in open court motion to re-assemble jury and write a verdict of Not Guilty as to defendant and affidavits of jurors and W. L. Clark and A. B. Galloway in support off said motion."

This motion was heard and a demurrer thereto sustained on September 11th. An appeal was prayed and denied, but leave was granted to file a wayside bill of

exceptions, which was done, and thereupon a petition for *certiorari* and *supersedeas* was presented to and granted by a member of this court and argument has been heard.

The case for petitioner is clearly set forth in his motion, sworn to on the 13th of August, 1935, reading as follows:

"Comes now the defendant, W. L. Clark, and would show to the Court that the jury selected and sworn to try this cause, after due consideration, unanimously voted to acquit this defendant, but that due to the fact that said jury misconstrued the instructions and charge of this Honorable Court, they were laboring under the impression that they could not return a verdict of not guilty for the defendant W. L. Clark if they disagreed on a verdict regarding his co-defendants.

"This defendant would further show that said jury did, in fact, disagree as to the guilt or innocence of his co-defendants and, because of this fact, notwithstanding they had unanimously voted to acquit this defendant, they did not return a true verdict into court reflecting said fact, as they had a right to do, and defendant alleges that the only reason a verdict of acquittal was not returned in his behalf by said jury was because the jury was laboring under the erroneous impression that they could not do so without making final disposition of the cases against his co-defendants.

"Defendant would further show to the Court that he has been tried, as required by law, on the indictment in this cause, and has, in truth and in fact, been acquitted of the charges against him by the unanimous vote of twelve (12) jurors; and alleges that if he is forced to go to trial again it will be in violation of his constitutional

rights—that is to say, placing him in jeopardy for the second time for the same offense.

"In support of the facts herein alleged, this defendant attaches hereto as exhibits one to eleven, both inclusive, the affidavits of J. H. White, J. Malcolm Green, W. R. Walpole, M. V. Palvado, H. W. Cox, Major H. Martin, Edward W. Mathis, Samuel H. Hurdlow, Malcolm G. Gibson, Walter Delashmit, and W. F. Graham, being the identical eleven (11) men empaneled, and sworn to try this cause against him.

"Defendant further alleges that he was not apprised of the facts herein stated until after the jury had reported in this cause and had been discharged and disbanded; that they were discharged about 10:00 o'clock A. M. Aug. 15, 1935, and this defendant is filing this motion at the earliest possible time after being advised of the facts herein stated.

"Wherefore, Defendant prays:

"That said jury, whose names are given above, be reassembled by this Honorable Court and directed to amend and make such change in their verdict as to the matter of form thereof so as to reflect their true decision; and that they be required to so amend or change their finding to read—'We, the Jury, find the defendant, W. L. Clark, not guilty;' or, that the Court record the true verdict of the jury."

The demurrer, sustained by the trial judge, challenged the jurisdictional power of the court to reassemble the jury after discharge and separation, for the purpose of amending and correcting their verdict; and of the jury to amend or correct their verdict after discharge and separation. It was further asserted that jurors would

not be heard to impeach their verdict or finding by averring that they misunderstood the court's charge.

It is conceded that the situation presented is anomalous, and that no precedent can be found for the action invoked by the motion. This is not of itself conclusive, for situations do arise in which justice calls for the cutting of new paths. It is well said that, ''What is needed for the administration of the law is not a dead learning, nor a cult of the letter, nor excessive reverence for precedent. A reasonable administration of justice depends on payment of due regard to actual life and its circumstances.'' Science of Legal Method (volume IX, Modern Legal Philosophy Series, p. 87). And this court, speaking through Mr. Justice Cook, has recently said: ''Rules of procedure are, of course, necessary, and they must be observed, but observance of an antiquated procedure is justified only as it is supported by reason. Observance of bare mechanical forms, the reason for which no longer exists, and not affecting the substantive rights of litigants, is no more justified in the administration of the business of courts than would be the application of an antiquated, inadaptable theory of architecture to a modern building problem. Procedural law must respond to rational administration.'' *Manning* v. *State*, 155 Tenn., 266, 292 S. W., 451, 454.

But, long-established precedents of substantive law and practice may not be lightly disregarded. Vital underlying principles are frequently involved which may not be departed from, even though isolated facts may apparently seem to justify such a departure. An invariably followed rule, supported not only by precedent, but the soundest reason, grounded on universal knowledge of

human nature, is the rule that after the discharge of a jury in a felony case and the separation of the jurors to such a degree that outside contacts may have been even momentarily had, the members of that jury may not be reconvened for the taking of any action whatever involving the fate of the accused. It is hardly necessary to cite authority for so elementary a proposition, but see *Long* v. *State*, 132 Tenn., 649, 179 S. W., 315, which holds, and reviews our cases so holding, that separation of a jury in a felony case is a violation of constitutional guarantees of a fair and impartial trial by jury, and that even the consent of the accused will not warrant such separation under circumstances leaving the jurors free to form outside contacts. The recitals on the face of petitioner's motion clearly bring the case within this rule. Surely learned counsel for petitioner would not contend that a verdict of guilty, reported by a jury reconvened after discharge and such separation, as is shown by this petition, could be received and made effective by Court order. The rule must work both ways.

It is urged on the petition to this court that "it was a very short time" only, after the discharge of the jury, and that "all of the jurors had not left the Court building" when "counsel informed the Court as to this error of the foreman in reporting an erroneous finding of the jury." Neither exactly how long a time, nor how many had left the building, appears, but flexibility in time of separation is incompatible with the enforcement of this rule. In the given case it is apparent, of course, that such time and opportunity as is wholly inconsistent with the rule was afforded following the discharge as enabled counsel and others to approach and confer with the mem-

bers of the jury, out of the presence of the court, or its officers, and discuss with them their deliberations and particularly their views touching the guilt or innocence of the accused. If it can be said that the men so approached were still clothed with their responsibility as jurors, then they were not subject to be so approached and interviewed; if they had passed out of this status, they had become powerless to resume it, and the court was powerless to reinstate them in it.

Diligent and earnest counsel have cited us to cases recognizing the right of the court to reconvene a jury for the correction of a verdict, but these holdings are not controlling or, indeed, applicable here, and for reasons additional to those suggested on the brief for the state, namely, that these cases relate to corrections in matters of form, as distinguished from substance, and that they are civil, rather than criminal. They are all cases in which some "verdict" has been returned to the court. We have no verdict here. The word "verdict" is derived from the Latin and results from the coalition of the two words *vere,* truly, and *dictum,* a saying. Bouv. Law Dict. (Rawle's Third Rev.). Until there has been a "saying," that is, a pronouncement of a truth arrived at, there can be no "verdict." Here, the jury merely reported "that it was hopelessly hung and that it was a moral and physical impossibility to agree on a verdict." Agreement on the issue of guilt or innocence is of the very essence of a verdict. Here we have an agreement, but an agreement only that there is not and cannot be an agreement on the issue, and that this is to be reported to the court. A mistrial resulted. The term "mistrial" is aptly applied to a case in which a jury is discharged without a verdict. *Fisk*

v. *Henarie* (CC.), 32 F., 417, 425, 427. And even "consent of parties cannot help such a trial, when past." Bouv. Law Dict. (Rawle's Third Rev.), citing 5 Hobarts (Eng. Com. Pleas) Reports.

Upon analysis of these authorities cited, it will be seen, as before suggested, that they are all cases in which there was an intention and an effort to return a verdict, which proved ineffective in form, or, in one or two cases, clerically inaccurate. For example, *Glennon* v. *Fisher*, 51 Idaho, 732, 10 P. (2d), 294, 295, is authority merely for correcting the verdict to conform it "to what was actually found and *intended to be returned* by the jury." It was held that this might be done on affidavits of jurors after discharge. But note the words italicized by us. In the instant case, however fully it may be made to appear that the jury arrived among themselves at the decision that petitioner was not guilty, there is no claim that they agreed to so report or return, or that they agreed to report any agreement whatever, except that they could not agree.

In *McCabe Lumber Co.* v. *Lumber Co.*, 187 N. C., 417, 121 S. E., 755, a clerical mistake had been made in reporting the verdict. While recognizing the rule that "Jurors will not be allowed to attack or to overthrow their verdicts, nor will evidence from them be received for such purpose," citing cases, the court said: "But this rule does not affect the power of the court to perfect a verdict, nor to correct any inadvertence or mistake that may have occasioned the entry of a verdict at variance with the real finding of the jury," citing *Cox* v. *High Point, R. & S. R. Co.*, 149 N. C., 86, 87, 62 S. E., 761, 16 Ann. Cas., 474; *Cole* v. *Laws*, 104 N. C., 651, 10 S. E., 172,

and other cases. However, in this case, again, there had been an intention and effort to return a verdict. To the same effect is *Lattner Mfg. Co.* v. *Higgins*, 196 Iowa, 920, 195 N. W., 746.

Counsel for petitioner emphasize, as favorable to their contention, *Moulton* v. *Staats*, 83 Utah, 197, 27 P. (2d), 455, 459, holding that affidavits of jurors are admissible to show that the verdict reported was not that "agreed on and intended to be expressed," and that the court may amend the judgment accordingly. But, note again the language quoted. We have here no "verdict" reported, and none "agreed on and intended to be expressed." It is conceded here that the report of disagreement was that intended to be reported. This determinative distinction runs through all the cases we have examined.

As indicated by what has been said, no way appears to be open, on principle or authority, for the granting of the motion of petitioner, which calls for a reconvening of a discharged and disbanded jury and the receiving of a verdict of acquittal of petitioner.

■ Counsel, under a prayer for general relief, invoke the protection guaranteed by our State and Federal Constitutions against double jeopardy, grounded on the maxim, a man shall not be brought into danger of his life or liberty for one and the same offense more than once. As declared by Mr. Justice Cook in *Holt* v. *State*, 160 Tenn., 366, 371, 24 S. W. (2d), 886, 887: "The right not to be put in jeopardy a second time for the same offense is as important as the right of trial by jury, and is guarded with as much care."

What constitutes in jeopardy is defined in *Green* v.

*State,* 147 Tenn., 299, at page 303, 247 S. W., 84, 85, 28 A. L. R., 842, approved in later cases as follows:

"An accused is in jeopardy, within the meaning of this provision of the Constitution, whenever he is put to trial in a court of competent jurisdiction, with a valid indictment and the plea thereto, has a jury sworn upon an issue to make deliverance, and the jury is charged with the deliverance of the accused, when he has been placed in the hands of the jury for trial; that is, when the jury is sworn to try the issue upon the indictment and the plea thereto, and before the reading of the indictment or the introduction of testimony. *Ward* v. *State,* 1 Humph. [253], 260; *Tomasson* v. *State,* 112 Tenn., 596, 79 S. W., 802."

However, in that case the court reviews the generally adopted holding that if the jury is discharged before verdict, for any clearly justifiable reason, of which illustrations are given in the opinion, the defense of former jeopardy would not be available to the accused on his second trial. The courts came to this holding with evident reluctance, conceding elements of apparent inconsistency, in order to meet the demands of necessity; seeing that otherwise the plainly guilty would be afforded an avenue of escape. (See opinions quoted in *Green* v. *State, supra,* particularly that of CRABB, J., in *State* v. *Waterhouse,* 1 Mart. & Y., 278, 279). And, in *Manning* v. *State, supra,* this court, reaffirming this rule of exception, said that "the trial judge may discharge the jury or a single juror after the accused has been put upon his trial when necessity or the ends of public justice require, but that it cannot be done capriciously." When once found not guilty he may thereafter plead *autrefois acquit.*

thereby setting up such acquittal in bar. *U. S.* v. *Gibert*, 25 Fed. Cas., 1287, No. 15,204. It is earnestly urged that the motion and affidavits in this case show, and the demurrer admits, that Clark was indicted, appeared, pleaded, was subjected to a long, tedious and expensive trial before a jury of his peers, and that following argument of counsel and a charge by the court the jury retired to deliberate and determine the issue of his guilt or innocence; and that after such trial and upon such deliberation the jurors unanimously agreed that he was not guilty; and it is urged that he was thus, in all essentials, both of law and fact, brought in danger of his liberty, and that in all good conscience and common justice he should not again be sent to trial for the same offense; that form should give way to substance, the letter to the spirit, and that a mistake in making their return to the court should be corrected, in order that plain and simple justice may be done.

The gist of this argument, plausibly made, seems to be, in emphasis of the limitation of judicial recognition of an exception in application of the constitutional immunity against double jeopardy to cases of clear necessity, where pending the trial the jury is discharged before verdict, that here, where the facts admitted by the demurrer are considered, no necessity appears. That here, unlike any reported case, from any source, the trial proceeded to that conclusive point where the jury in fact considered and determined the issue of guilt or innocence, and that the court should not on such facts give application to this exception of necessity so as to deprive petitioner of that fundamental right to immunity from being put a second time in jeopardy, secured by the State and Federal Con-

stitutions. Conceding the plausibility of this appeal, the question is not now before us for decision, for this plea is quite obviously premature.

Petitioner has never yet been put to a second trial. He may never be. Time, with its fortuitous incidents, intervenes. Moreover, should the petitioner be again arraigned, the learned trial judge, if convinced that in truth and in fact all twelve of the jurors on this trial did agree, and continued to the end of their deliberations to agree, that petitioner was innocent, and that they failed to so report only because of a mistaken conception of their authority in the matter, may well conceive it his duty to exercise the right vested in him, of advising the entry of a *nolle prosequi*. This would avoid the issue which might otherwise be then raised under the plea of *autrefois acquit*. Or, if the trial judge should direct a verdict for this defendant, in conformity to a practice now followed by many trial judges in this state, though never directly approved by this court, the matter would be concluded, since the State would have no appeal. *State* v. *Vincent*, 147 Tenn., 458, 249 S. W., 376; *State* v. *Norvell*, 2 Yerg., 24, 24 Am. Dec., 458; *Slaughter* v. *State*, 6 Humph., 410, at page 414.

However, since the question is not now before us, this court expresses no opinion as to the sufficiency or effect of such a plea, if hereafter entered. In the present state of the case, for the reasons indicated, we are of opinion, first, that the motion to reconvene the jury and receive an amended verdict was properly denied; second, that the invoking of the constitutional provision against double jeopardy is premature, and the question whether or not petitioner's constitutional rights would be invaded by a

second trial for the same offense, under the circumstances alleged in the motion, is, therefore reserved. The petition must be dismissed.