IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
December 10, 2002 Session

## STATE OF TENNESSEE v. GREGORY DALE CLAYTON

**Direct Appeal from the Criminal Court for Davidson County**
**No. 2001-T-84    Steve R. Dozier, Judge**

---

**No. M2002-00058-CCA-R3-CD - Filed July 3, 2003**

---

The appellant, Gregory Dale Clayton, was found guilty by a jury in the Davidson County Criminal Court of driving under the influence (DUI). The trial court imposed a sentence of eleven months and twenty-nine days incarceration in the Davidson County Jail. Additionally, the appellant pled guilty to a violation of the implied consent law and suffered the forfeiture of his driver's license for one year. On appeal, the appellant raises two issues relating to the rendering of the jury's verdict. Upon review of the record and the parties' briefs, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which DAVID G. HAYES and JOHN EVERETT WILLIAMS, JJ., joined.

Fletcher W. Long, Nashville, Tennessee, for the appellant, Gregory Dale Clayton.

Paul G. Summers, Attorney General and Reporter; David H. Findley, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; and Kristen K. Shea, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

### I.  Factual Background

Shortly after midnight on April 12, 2000, the appellant, a criminal defense attorney and former police officer, was stopped for speeding by Officer Robert Conley with the Metropolitan Nashville Police Department (Metro). Officer Conley "clocked" the appellant driving fifty-seven miles per hour (mph) in a thirty-five mph zone. Officer Conley activated his blue lights and pursued the appellant. In response, the appellant parked his car on the side of the road.

Officer Conley got out of his vehicle and walked to the driver's window of the appellant's vehicle and requested the appellant's driver's license. The appellant slightly opened his window and passed the officer his license. Officer Conley immediately noticed a strong odor of

alcohol emanating from the appellant and his vehicle. The appellant was uncooperative and hostile so Officer Conley requested assistance from Stephen Beck, a fellow Metro officer who had been parked nearby when the pursuit was initiated.

After Officer Beck arrived, Officer Conley instructed the appellant to exit his vehicle. In response, the appellant rolled up his window, began talking on his cellular telephone, and refused to get out of the vehicle. After instructing the appellant several times to exit his vehicle, Officer Conley informed the appellant, "I'm gonna give you the count of three . . . then we're gonna take you outta the car." Upon receiving the warning, the appellant exited the vehicle, but immediately informed the officers that he would not perform any field sobriety tests. The appellant also refused to take a breathalyzer test. Both Officer Conley and Officer Beck smelled alcohol on the appellant and in the car. The officers also observed that the appellant was unsteady on his feet and his speech was slurred. The officers determined that the appellant was obviously too intoxicated to safely operate his vehicle.

Officer Conley arrested the appellant and placed him in the back of the patrol car. While sitting in the patrol car, the appellant informed Officer Conley that he would submit to a blood test if his attorney could be present for the drawing of his blood. Officer Conley informed the appellant that he would not be allowed to have his attorney present for a blood test. The appellant then instructed Officer Conley to "[j]ust take me to Booking."

Based upon the foregoing facts, the jury found the appellant guilty of DUI. After the verdict was returned, the appellant requested that the trial court poll the jury. The trial court then asked each juror if the verdict of guilt was his or her individual verdict. Each juror individually responded that it was; however, when juror Linda Helms was questioned, she hesitated approximately five seconds before responding that she concurred in the verdict of guilt.

Subsequently, the trial court sentenced the appellant to eleven months and twenty-nine days incarceration on the DUI conviction. The court suspended all but ten days of the sentence.

Thereafter, the appellant moved for a new trial. At the appellant's hearing on his motion for new trial, the appellant complained that the trial court should have questioned Helms regarding her hesitation during the jury poll. Additionally, the appellant contended that juror Helms only agreed with the verdict of guilt because she believed that if she did not join in the verdict the trial court would "be very upset [with her]."

Helms testified at the hearing on the motion for new trial. She explained that she hesitated during the jury poll because she did not believe that the appellant was guilty. However, she felt "pressured" to render a guilty verdict because someone made the statement that if the verdict was not unanimous, the trial court would be upset. Helms stated that she believed the statement was made by the jury foreperson, but another member of the jury could have made the statement. She also stated that some of her fellow jurors "were offering us cake to change our minds." She maintained that if the trial court had inquired regarding her hesitation, she would have explained that

-2-

she did not agree with the verdict.  Regardless, Helms acknowledged that she was "sure" that the jury was instructed "to try and reach a unanimous verdict, as long as that didn't do violence to an individual's opinion."

Gale Conner, another juror, also testified at the hearing on the motion for new trial. Conner stated that if Helms had expressed disagreement with the verdict, then "I probably woulda came forward, too."  She also believed that the jury foreperson made the statement that the trial court would be mad at the jury if they did not render a unanimous verdict.  She understood the trial court's instruction that the jury must render a unanimous verdict.  Conner conceded that she remembered reading in the jury charge that a unanimous verdict should be rendered only if the verdict did not do violence to an individual's opinion.

After considering the foregoing proof, the trial court entered an order denying the appellant's motion for new trial.  On appeal, the appellant raises the following issues for our review: (1) whether the trial court erred in not inquiring as to the source of Helms' hesitation upon being polled and (2) whether the "jurors were exposed to improper extraneous influence(s) which were prejudicial to the Appellant's right to a fair and impartial trial."

## II.  Analysis
### A.  Jury Poll

Tennessee Rule of Criminal Procedure 31(d) provides "[w]hen a verdict is returned and before it is recorded the jury shall be polled at the request of any party or upon the court's own motion.  If upon the poll, there is not unanimous concurrence the jury may be directed to retire for further deliberations or may be discharged."  Rule 31 essentially follows its federal counterpart. See Tenn. R. Crim. P. 31, Advisory Commission Comments; see also Fed. R. Crim. P. 31.[1]  Because there is no Tennessee law on point, we will look to federal law for guidance as to the standard of review regarding a trial court's determinations in a polling situation.

An examination of the application of Federal Rule of Criminal Procedure 31(d) reveals that a trial court's method of polling the jury is subject to an abuse of discretion standard. See United States v. Miller, 59 F.3d 417, 420 (3rd Cir. 1995); United States v. Sturman, 49 F.3d 1275, 1282 (7th Cir. 1995); Gov't of the Virgin Islands v. Hercules, 875 F.2d 414, 418 (3rd Cir. 1989).  Additionally, federal courts have also noted that Rule 31(d) "invests the trial judge with a measure of discretion in assessing the impact of a dissenting vote during a jury poll, and the reasonable exercise of this discretion should be accorded proper deference by a reviewing court." United States v. Brooks, 420 F.2d 1350, 1353 (D.C. Cir. 1969); see also United States v. Lockhart, 366 F. Supp. 843, 848 (E.D. Pa. 1973).  As the ninth circuit district court noted in United States v. McClintock, 748 F.2d 1278, 1293 (9th Cir. 1984), only the trial court can determine whether an affirmative response to a jury poll is "tainted, coerced or in any other way demonstrative of

---

[1] Federal Rule of Criminal Procedure 31(d) provides that "[a]fter a verdict is returned but before the jury is discharged, the court must on a party's request, or may on its own, poll the jurors individually. If the poll reveals a lack of unanimity, the court may direct the jury to deliberate further or may declare a mistrial and discharge the jury."

-3-

uncertainty." See also United States v. Gomez-Lepe, 207 F.3d 623, 630 (9ᵗʰ Cir. 2000) (stating that "the trial judge has broad discretion to decide how to proceed in a polling situation").

Additionally, we note that in Tennessee civil cases, no particular method of polling a jury is mandated; thus, it rests within the trial court's discretion to determine the manner of polling the jury. See Dixon Stave & Heading Co. v. Archer, 291 S.W.2d 603, 608 (Tenn. Ct. App. 1956). Correlatively, Tennessee appellate courts have stated that "no particular form of answer is essential on the polling of a jury, it being sufficient if the answer of the juror . . . indicates with reasonable certainty that the verdict is his [or her] own." Id. at 609; see also Davis v. Wilson, 522 S.W.2d 872, 883 (Tenn. Ct. App. 1974); Smith v. Weitzel, 338 S.W.2d 628, 638 (Tenn. Ct. App. 1960). Thus, it stands to reason that the trial court's determination of whether a juror's answer to the jury poll is equivocal is within the trial court's discretion.

After the jury was dismissed, the appellant brought Helms' hesitation to the attention of the trial court. The trial court observed, "I noted that Ms. Helms hesitated for about five seconds, is what I would think, and indicated that, yes, that was her verdict. I made no notation, or didn't note at all, notice at all anything about her shaking her head." Clearly, the trial court did not interpret Helm's hesitation as an expression of her disagreement with the jury's verdict. See Donahue v. George, 329 S.W.2d 836, 839 (Tenn. Ct. App. 1959). We discern no reason why the trial court, once satisfied with the unanimity of the verdict, should have conducted further inquiries. As in the case of jury voir dire, "[t]he trial court has the opportunity to both visually and auditorially observe the demeanor of . . . jurors . . ., and accordingly, evaluate their credibility." State v. Keen, 31 S.W.3d 196, 228 (Tenn. 2000) (appendix). We conclude that the trial court committed no error.

B. Disagreement with Verdict

The crux of the appellant's complaints is that two jurors disagreed with the guilty verdict. In support of his complaint, the appellant had the two jurors testify at the hearing on the motion for new trial. Initially, we note that "[p]arties seeking a new trial because of alleged jury misconduct must at the outset satisfy the court that they have admissible evidence on the issue." Caldararo v. Vanderbilt Univ., 794 S.W.2d 738, 741 (Tenn. Ct. App. 1990).

Tennessee Rule of Evidence 606 governs the competency of a juror as a witness. Rule 606(b) provides:

> Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon any juror's mind or emotions as influencing that juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes, except that a juror may testify on the question of whether extraneous prejudicial information was improperly brought to the jury's attention, whether any outside influence was improperly brought to bear upon any juror, or whether the jurors agreed in advance to be bound by a quotient or gambling verdict without further

-4-

discussion; nor may a juror's affidavit or evidence of any statement
by the juror concerning a matter about which the juror would be
precluded from testifying be received for these purposes.

Furthermore, the advisory commission comments to the rule explain that "[a]fter verdict, part (b) would come into play. A juror may testify . . . in connection with a motion for new trial, but only in the limited circumstances of: (1) 'extraneous prejudicial information' finding its way into the jury room, (2) improper outside pressure on a juror, or (3) a quotient or gambling verdict." Tenn. R. Evid. 606, Advisory Commission Comments; see also Caldararo, 794 S.W.2d at 742; David Lee McNish v. State, No. 03C01-9712-CR-00550, 1999 WL 604436, at **14-15 (Tenn. Crim. App. at Knoxville, Aug. 12, 1999). Extraneous information is information coming from a source outside the jury. See State v. Coker, 746 S.W.2d 167, 171 (Tenn. 1987); see also Neil P. Cohen et al., Tennessee Law of Evidence, § 6.06[4], at 6-51 (LEXIS publishing, 4th ed. 2000).

In the instant case, both Helms and Conner testified at the motion for new trial hearing that they changed their verdict because the jury foreman had told them that the trial court would be "upset" if the jury did not render a unanimous verdict. This does not constitute "extraneous information" or "outside pressure" as contemplated by Rule 606(b). See Montgomery v. State, 556 S.W.2d 559, 561 (Tenn. Crim. App. 1977); State v. Ricky Eugene Cofer, No. E2000-00532-CCA-R3-CD, 2000 WL 1843303, at *3 (Tenn. Crim. App. at Knoxville, Dec. 15, 2000). Accordingly, the testimony presented by Helms and Conner was not admissible under Rule 606(b). This issue is without merit.

### III. Conclusion

Finding no error, we affirm the judgment of the trial court.

_____
NORMA McGEE OGLE, JUDGE