IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
September 13, 2005 Session

**STATE OF TENNESSEE v. ANTHONY D. BROWN**

**Direct Appeal from the Circuit Court for McNairy County**
**No. 1693     Jon Kerry Blackwood, Judge**

---

**No. W2005-00199-CCA-R3-CD  - Filed January 10, 2006**

---

Following a jury trial, Defendant, Anthony D. Brown, was convicted of one count of aggravated burglary, a Class C felony, and one count of carrying a knife with the intent to go armed, a Class C misdemeanor. The trial court sentenced Defendant to fifteen years for his aggravated burglary conviction and thirty days for his misdemeanor conviction. Defendant does not challenge the sufficiency of the convicting evidence or the trial court's sentencing determinations. On appeal, Defendant argues that the trial court erred in not declaring a mistrial pursuant to Rule 31(d) of the Tennessee Rules of Criminal Procedure when one of the jurors indicated to the trial court that she did not agree with the verdicts after the jury had been polled and discharged. After a thorough review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3, Appeal as of Right; Judgments of the Circuit Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which DAVID G. HAYES and JOHN EVERETT WILLIAMS, JJ., joined.

James N. Adams, Jr., Selmer, Tennessee, for the appellant, Anthony D. Brown.

Paul G. Summers, Attorney General and Reporter; J. Ross Dyer, Assistant Attorney General; Elizabeth T. Rice, District Attorney General, for the appellee, the State of Tennessee.

**OPINION**

**I.  Background**

Emma Maxine Johnson testified that she went into her backyard around 8:30 a.m. on July 12, 2004, to feed her birds. She left the door to her sun porch cracked open so that her cats could come and go from the house. When Ms. Johnson returned to the house, she saw a man, whom she later identified as Defendant, standing inside her sun porch. She asked Defendant what he was doing, and Defendant told her he was looking for yard work. Ms. Johnson told Defendant to leave. Defendant apologized and left her house.

Ms. Johnson then noticed that her television, VCR, and four video games were piled up in the middle of the floor of the sun porch, and Ms. Johnson called the police.

Officer Danny Pinson, with the Selmer Police Department, was dispatched to Ms. Johnson's house at 8:48 a.m. Ms. Johnson told the police that the suspect was wearing a yellow shirt and a baseball cap, and that he had walked up Oak Street toward Purdy Road after he left her house. Officer Pinson saw a man matching Ms. Johnson's description at the intersection of Oak Street and Purdy Road. He called Defendant over to the police car. Defendant told Officer Pinson that he had just left Ms. Johnson's house, and he said that he had asked Ms. Johnson for work. Officer Pinson said Defendant reached into his pants pocket, and Officer Pinson drew his weapon. Defendant took a knife out of his pocket and threw it into the bushes by the side of the road. Officer Pinson drove Defendant to Ms. Johnson's house, and Ms. Johnson identified Defendant as the perpetrator.

## II. Failure to Declare a Mistrial under Rule 31(d)

The transcript of the trial reflects that the following sequence of events occurred after the jury returned to the courtroom with its verdict:

**FOREPERSON**: (Reading) "We, the jury, find the defendant guilty of aggravated burglary. Count No. Two, we, the jury find the defendant guilty of carrying a knife with the intent to go armed."

(**WHEREUPON**, The Court polled each juror, inquiring whether the verdict, as announced by the foreperson, was each juror's individual verdict, and each juror indicated in the affirmative that was his or her verdict. The Court then excused the jury and as the jurors were leaving the courtroom, Juror Jacqueline Edwards approached the Bench, and the following proceedings were had at the Bench, to-wit:)

**MS. EDWARDS**: I'd like to make a remark, please.

**THE COURT**: What, ma'am?"

**MS. EDWARDS**: I've got to tell you I didn't go along with that.

**THE COURT**: I asked you was that your verdict and you answered yes. Is that correct?

**MS. EDWARDS**: But you passed me so fast I didn't have time to say anything.

(Pause)

| | |
|---|---|
| **THE COURT**: | Let me think a minute. |

(Pause)

| | |
|---|---|
| **THE COURT**: | Come around, [defense counsel] and [prosecutor]. |

(**WHEREUPON**, [defense counsel] and [prosecutor] approached the Bench.)

| | |
|---|---|
| **THE COURT**: | You didn't hear that, did you?  Or did you hear it? |
| **DEFENSE COUNSEL**: | She said she didn't agree with them, but you moved too fast for her to say she didn't agree. |
| **THE COURT**: | That's correct. |
| **DEFENSE COUNSEL**: | In that case, I guess it's my job to move for a mistrial. |
| **THE COURT**: | That will be denied. |
| **PROSECUTOR**: | Didn't they all nod and say yes, Your Honor? |
| **THE COURT**: | Yes.  All Right.  Thank you. |

(Juror Jackqueline Edwards was dismissed from the courtroom).

In denying Defendant's motion for a mistrial, the Court observed that, "[w]hen I asked if that was their verdict, and I polled the jury, everyone nodded.  So I took that to mean that it was everybody's verdict. . . . There's a rule that a juror can't impeach their own verdict, which is basically what [Juror Edwards] did when she came up to the bench."

Based on this exchange, Defendant argues that the trial court erred in not granting the motion for mistrial as provided in Rule 31(d) of the Tennessee Rules of Criminal Procedure.  Defendant contends first that although the manner of polling a jury rests within the trial court's discretion, the record indicates that Juror Edwards did not answer with sufficient reasonable certainty in the affirmative when the poll was conducted.  Defendant submits that Juror Edwards' statements after the jury had been discharged demonstrated a lack of unanimity in the jury's verdicts.

Rule 31(d) of the Tennessee Rules of Criminal Procedure provides that:

[w]hen a verdict is returned *and before it is recorded* the jury shall be polled at the request of any party or upon the court's own motion.  If upon the poll, there is not unanimous concurrence the jury may be directed to retire for further deliberations or may be discharged.

(Emphasis added.)

"[A] trial court's method of polling the jury is subject to an abuse of discretion standard." *State v. Clayton*, 131 S.W.3d 475, 478 (Tenn. Crim. App. 2003). In *Clayton*, the jury returned a verdict of guilty of DUI against the defendant, and the defendant requested that the jury be polled. *Id*. at 477. The trial court asked each juror if the verdict of guilty was his or her verdict, and each juror individually responded that it was. *Id*. One of the jurors, however, hesitated approximately five seconds before answering affirmatively. *Id*. The defendant argued in his motion for new trial that the trial court erred in not examining the juror further as to the cause of her hesitation. *Id.*

The *Clayton* court initially noted that:

[I]n Tennessee civil cases, no particular method of polling a jury is mandated; thus, it rests within the trial court's discretion to determine the manner of polling the jury. *See Dixon Stave & Heading Co. v. Archer*, 40 Tenn. App. 327, 291 S.W.2d 603, 608 (1956). Correlatively, Tennessee appellate courts have stated that "no particular form of answer is essential on the polling of a jury, it being sufficient if the answer of the juror . . . indicates with reasonable certainty that the verdict is his [or her] own." *Id*. at 609; *see also Davis v. Wilson*, 522 S.W.2d 872, 883 (Tenn. Ct. App. 1974); *Smith v. Weitzel*, 47 Tenn. App. 375, 338 S.W.2d 628, 638 (1960). Thus, it stands to reason that the trial court's determination of whether a juror's answer to the jury poll is equivocal is within the trial court's discretion.

*Clayton*, 131 S.W.3d at 479. The *Clayton* court further observed, "[a]s in the case of jury voir dire, '[t]he trial court has the opportunity to both visually and auditorially observe the demeanor of . . . jurors . . ., and accordingly, evaluate their credibility.'" *Id*. at 479 (quoting *State v. Keen*, 31 S.W.3d 196, 228 (Tenn. 2000) (appendix)).

In the case *sub judice*, Defendant did not ask the trial court to poll the jury and did not object to the trial court's method of polling. The trial court, on its own motion, polled the jury, and the record reflects that each juror affirmatively indicated that the verdicts were his or her own individual verdicts. The record also shows that the trial court did not detect any sign from Juror Edwards that she did not agree with the verdicts until after the jury was polled and discharged. The method of conducting the poll was under the control of the trial court and not subject to appellate review absent an abuse of discretion. *Dixon Stave and Heading Company*, 291 S.W.2d at 609. Based on our review, we conclude that the trial court did not abuse its discretion in the manner in which it conducted the polling process.

Defendant argues that notwithstanding the method of polling, the trial court erred in not declaring a mistrial pursuant to Rule 31(d) when Juror Edwards told the trial court that she did not agree with the jury's verdicts "within seconds" after the jury was discharged. Rule 31(d) addresses a trial court's options when informed of a jury's lack of unanimity before the verdict is recorded. Tenn. R. Crim. P. 31(d). Because the verdict in the case *sub judice* had been recorded before Juror Edwards expressed her concerns, Defendant's reliance on Rule 31(d) to support his contention that the trial court should have called a mistrial is misplaced. Once the jury is discharged, the

circumstances under which a jury may be reassembled are limited. *See State v. Green*, 995 S.W.2d 591, 612 (Tenn. Crim. App. 1998). In the instant case, the record indicates that the jury was polled, the jurors indicated unanimity with the verdicts, and the jury was verbally discharged. The record also indicates that the jurors were in the process of leaving the courtroom when Juror Edwards approached the bench, although the record does not show how many jurors had left or where they had gone.

It is well-settled that a jury may not be reassembled to amend, correct or impeach its verdict once the jury has been discharged. *See Clark v. State*, 170 Tenn. 494, 97 S.W.2d 644, 646 (1936); *Green*, 995 S.W.2d at 606-614. "[B]oth separation from the presence and control of the trial court and the possibility of outside contacts or influence are important elements in the determination of when a jury has been discharged." *Green*, 995 S.W.2d at 612.

Our Supreme Court has stated that "after the discharge of a jury in a felony case and the separation of the jurors to such a degree that outside contacts may have been momentarily had, the members of that jury may not be reconvened for the taking of any action whatever involving the fate of the accused." *Clark*, 97 S.W.2d at 646. The Court observed:

> It is urged on the petition to this Court that "it was a very short time" only, after the discharge of the jury, and that "all of the jurors had not left the Court building" when "counsel informed the Court as to this error of the foreman in reporting an erroneous finding of the jury." Neither exactly how long a time, nor how many had left the building, appears, but flexibility in time of separation is incompatible with the enforcement of this rule.

*Id*.

Although the record is sparse, it appears that at least some of the jurors may have left the courtroom and the presence of the trial court after being verbally discharged by the jury. Based on the record presented in this case, we conclude that the jury had been discharged after reporting guilty verdicts, and the trial court did not err in not reassembling the jury to conduct further inquiries.

## CONCLUSION

After review, the judgment of the trial court is affirmed.

_____
THOMAS T. WOODALL, JUDGE