IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs July 1, 2008

## STATE OF TENNESSEE v. LEONARD RAY FITZGERALD

**Direct Appeal from the Circuit Court for Henry County**
**No. 14013     C. Creed McGinley, Judge**

---

**No. W2007-02597-CCA-R3-CD  - Filed August 29, 2008**

---

The defendant, Leonard Ray Fitzgerald, was convicted of two counts of sale of over .5 grams of cocaine, a Class B felony, and sentenced as a Range I, standard offender to concurrent eight-year sentences, with seven years to be served on probation after one year in the Department of Correction. The jury assessed a $100,000 fine in each count, which the trial court imposed. On appeal, the defendant argues that the jury's verdict was not unanimous, the fines were excessive, and he should have been sentenced as an especially mitigated offender and granted full probation. Following our review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS, J., joined. J.C. MCLIN, J., not participating.

Larry E. Fitzgerald, Memphis, Tennessee, for the appellant, Leonard Ray Fitzgerald.

Robert E. Cooper, Jr., Attorney General and Reporter; Jennifer L. Bledsoe, Assistant Attorney General; Hansel J. McCadams, District Attorney General; and Beth C. Boswell, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**FACTS**

**State's Proof**

Paris Police Sergeant Joshua Mann Frey testified that in October 2005 he was approached by Clifford Beaver, who stated that he was interested in working as an informant and could purchase drugs from the defendant. Sergeant Frey agreed to pay Beaver $840 to make two drug purchases from the defendant and testify in court regarding the purchases.

On October 14, 2005, Sergeant Frey met Beaver behind a church off Highway 79 South and searched him for drugs. Investigator Ricky Watson searched Beaver's vehicle. Beaver was given a baseball cap containing an electronic wire and $200 with which to purchase drugs. The officers then followed Beaver to his home on Jackson Street and parked in a driveway across the street, facing Beaver's house. Beaver went inside, called the defendant, and then came back outside and sat on his front steps. Twenty to twenty-five minutes later, a grey Chevrolet Tahoe driven by the defendant arrived at Beaver's house, and Beaver approached the passenger's side window of the vehicle. Sergeant Frey testified that the defendant was the only person in his vehicle. After "[a] minute," the defendant drove off and Beaver got into his car and drove back to the church. There, Beaver handed Sergeant Frey three bags of crack cocaine. The State played for the jury audio and video recordings of this purchase.

At about 4:00 p.m. on October 18, 2005, Sergeant Frey again met Beaver at the church. He searched Beaver, and Investigator Watson searched Beaver's car and gave him a body wire. Sergeant Frey rode with Beaver to his house, followed by Investigators Watson and Wyrick. He accompanied Beaver inside his house, and the investigators parked across the street. Sergeant Frey searched Beaver's kitchen, dining room, and living room. Beaver remained in his presence from the time they got into the car until the purchase took place. Beaver called the defendant and ordered $200 worth of crack cocaine. At around 7:00 p.m., the defendant drove up and Beaver went outside to the car. When he returned to the house, he handed Sergeant Frey three bags of crack cocaine. The State played for the jury audio and video recordings of this purchase. The next day, Sergeant Frey met Beaver, received a statement from him, and paid him $840.

On cross-examination, Sergeant Frey testified that on October 14 he did not search Beaver after he went into his house before the purchase. He said he did not see the defendant hand anything to Beaver during either purchase. He stated that on October 18, it was dark outside when the defendant arrived, and he could not see what Beaver did when he was at the defendant's car.

Clifford Richard Beaver, Jr. testified that he was convicted of misdemeanor theft after working as a confidential informant in this case. He denied that he was promised any consideration regarding his criminal charges in exchange for working as an informant. He stated that he previously had been addicted to crack cocaine and marijuana and entered a rehabilitation program in January 2006. He completed the rehabilitation program in September 2006 and later returned to work at the rehabilitation center.

Beaver testified that he contacted Sergeant Frey about working as an informant because he was in financial trouble and believed that he could curb his drug addiction if he made his supplier unavailable. He told Sergeant Frey that he could purchase drugs from the defendant, and they agreed on a payment of $840. He testified that he met the defendant through a friend of his who purchased crack cocaine from a trailer on Cooper Street. "Tammy," who lived in the trailer, coordinated the defendant's crack cocaine sales. One day, after Beaver had purchased some cocaine from "Tammy," the defendant drove up and approached him as he got into his car. The defendant told Beaver,

"[Y]ou don't have to go through them no [sic] more. If you need something you just call me direct[.]" Thereafter, Beaver began purchasing drugs directly from the defendant.

Beaver testified that on October 14, 2005, he met Sergeant Frey at the church off Highway 79. Sergeant Frey searched him while Investigator Watson searched his car. Sergeant Frey gave him a baseball cap wired with a transmitter to provide an audio recording of the transaction and $200 with which to purchase cocaine. He drove to his house, followed by the officers. When he arrived, he called the defendant and told him he needed "two brothers bill" – $200 worth of crack cocaine. He went outside and waited for the defendant on his front steps. When the defendant arrived in his vehicle, Beaver walked up, engaged in some "idle conversation" with him, handed him $200, received three rocks of crack cocaine, and walked back inside his house. Once the defendant left, Beaver got into his car, drove back to the church, and gave the crack cocaine to Sergeant Frey.

On October 18, 2005, Beaver again met with officers at the church, where he and his car were searched and he was given $200 and the wired baseball cap. On this date, Sergeant Frey rode with him as he drove back to his house, followed by the other officers. When they arrived, he and Sergeant Frey went inside his house. Sergeant Frey set up a camera in the window, and Beaver called the defendant. The defendant said he was out of town and would contact Beaver on his way home. He called back later, and Beaver asked him for "two bills." Shortly thereafter, the defendant called back and said he was in the area. Beaver went outside to the defendant's car, and the defendant asked, "You need two bills?" Beaver responded yes and handed the defendant $200. The defendant gave Beaver three bags of crack cocaine, and Beaver returned to his house and gave the bags to Sergeant Frey. The next day, Beaver met Sergeant Frey and received his $840 payment.

On cross-examination, Beaver testified that he had been using cocaine since approximately February 2005. He stated that he had been using marijuana "off and on" since he was thirteen years old, and on a regular basis since around age sixteen. He testified that he was not sure when he most recently smoked marijuana prior to the October 14 purchase and stated that it "[c]ould have been" the previous day. He denied that his cocaine and marijuana use had affected his memory. He acknowledged that, in the past, he had lied and cheated to get drugs but denied that he had stolen to get drugs. Regarding his theft conviction, he admitted that he pled guilty but stated, "To me it wasn't stealing. In the law's eyes it was stealing." He further acknowledged pleading guilty in November 2005 to a charge of writing bad checks. He denied that he had ever borrowed money from the defendant. He testified that he purchased crack cocaine and marijuana after receiving his $840 payment from Sergeant Frey.

Special Agent Erica Katherine, a forensic scientist with the Tennessee Bureau of Investigation, testified that she analyzed the substances sold to Beaver by the defendant and found that the first substance weighed 1.1 grams and contained cocaine, and the second substance weighed 1.2 grams and contained cocaine.

Henry County Sheriff's Department Sergeant Scott Wyrick testified that he drove the undercover vehicle and operated the video equipment during the October 14 and 18 drug purchases.

He was present when the defendant was arrested at his home on December 28, 2005. He testified that when an officer read the arrest warrant to the defendant, the defendant asked "what he sold and who did he sell it to."

## Defense Proof

Tammy Johnson testified that she had been friends with the defendant for "twenty, twenty-five years" and knew Beaver because he used to visit one of her neighbors. She testified that she introduced Beaver to the defendant. She stated that she occasionally borrowed money from the defendant and that Beaver asked her if the defendant would lend him money as well. She testified that she "knew" the defendant had loaned money to Beaver. On cross-examination, Johnson said that she had seen money change hands between the defendant and Beaver. She acknowledged that she had written "several" bad checks in the last ten years.

The defendant testified that he met Beaver through Johnson and lent him money "several times." He said the maximum he loaned to Beaver at one time was $200 and that Beaver always paid the money back, albeit not always on time. He testified that Beaver devised a code whereby he would call and say, "I need to holler at Bill" when he needed to borrow money, in order to keep his borrowing a secret from his wife. He denied that he sold drugs to Beaver on October 14 or 18. He testified that on October 14, he went to Beaver's house and Beaver gave him a one hundred dollar bill. He denied giving anything to Beaver that day. He stated that, on October 18, he went to Beaver's house and loaned him $200.

Following deliberations, the jury found the defendant guilty of two counts of sale of over .5 grams of cocaine and assessed a $100,000 fine in each count. At the sentencing hearing, the State introduced the defendant's presentence report as an exhibit to the proceedings. The defendant testified that he was fifty-seven years old and had completed high school and one year of college. He said that he owned and managed sixteen units of rental property. He acknowledged that selling drugs was a "serious problem" and stated that "something should be done about it." On cross-examination, he testified that he did not accept the jury's verdict: "I'm saying I disagree with how the jury was – what happened within the jury. I don't think – what I'm saying is I don't think it was clear. To me, I don't think it was clear."

In sentencing the defendant, the trial court stated:

> He is a Class – Range I, [s]tandard [o]ffender, so that makes an appropriate range available of eight (8) to twelve (12) years on each of these two offenses.
>
> There is no statutory criteria under which the convictions would be consecutive, so sentencing will be concurrent.
>
> The jury had recommended a fine of one hundred thousand dollars ($100,000.00) on each count, which is confirmed by the Court.

There is requested restitution in the amount of four hundred ($400.00), which is hereby ordered by the Court. It will be two hundred ($200.00) on each count.

The Court finds, essentially, that he is entitled to be sentenced to the lowest amount in his range, because I don't find any enhancement factors.

I don't find that the criminal conduct did not threaten serious bodily injury because, I think the inherent nature of crack cocaine, that[] it's inappropriate for the Court to find that.

As I said, I'm going to sentence him to the minimum within the range which would be eight (8) years on each count. They will be concurrent.

The situation concerning potential alternative sentencing. He is not presumptively eligible having been convicted of a [C]lass B [felony], but our statutes make reference that the Court should look to see if confinement – the reasons, whether it is necessary to protect society to avoid [] depreciating the seriousness of the offense, or measures less restrictive than confinement have frequently or recently been applied.

I don't condone what has occurred. And the evidence was quite simply overwhelming. The video of his vehicle. And the man, essentially, was running a drug store out of his Ford Bronco or whatever the vehicle was . . . which gives the Court great concern, because I don't want to depreciate the seriousness of this offense.

However, the Court finds that split confinement would be appropriate in this case. I'm going to require that he serve one (1) year, the balance of seven (7) years will be on supervised probation.

## ANALYSIS

The defendant argues that the jury's verdict was not unanimous[1] and that the $100,000 fines fixed by the jury were excessive. He also argues that he should have been sentenced as an especially mitigated offender and granted full probation. The State argues that the jury's verdict was unanimous, the fines were not excessive, and the trial court properly sentenced the defendant. As we will explain, we agree with the State.

---

[1] The defendant frames this issue as a challenge to the sufficiency of the evidence but argues that the insufficiency lies in the jury's alleged lack of unanimity.

## I. Jury Unanimity

In Tennessee, a criminal defendant enjoys a constitutional right to a jury trial when facing the possibility of confinement or a fine of more than fifty dollars. See Tenn. Const. art. I, § 9; State v. Lemacks, 996 S.W.2d 166, 169 (Tenn. 1999). "This constitutional right necessarily includes the right to a unanimous jury verdict before conviction of a criminal offense may be imposed." Id. at 169-70; see also Tenn. R. Crim. P. 31(a).

Tennessee Rule of Criminal Procedure 31(e) provides:

> After a verdict is returned but before the verdict is recorded, the court shall–on a party's request or on the court's own initiative–poll the jurors individually. If the poll indicates that there is not unanimous concurrence in the verdict, the court may discharge the jury or direct the jury to retire for further deliberations.

The method used to poll the jury is left to the discretion of the trial court. State v. Clayton, 131 S.W.3d 475, 479 (Tenn. Crim. App. 2003). "'[N]o particular form of answer is essential on the polling of a jury, it being sufficient if the answer of the juror . . . indicates with reasonable certainty that the verdict is his [or her] own.'" Id. (quoting Dixon Stave & Heading Co. v. Archer, 291 S.W.2d 603, 608 (Tenn. Ct. App. 1956)). The determination of whether a juror's answer to the jury poll is equivocal is within the trial court's discretion. Id.

The defendant argues that "[a]fter polling the jury, it came to the Court's attention that one of the jurors had reasonable doubt as to a guilty verdict." During the poll of the jury, the following exchange took place:

THE COURT: [Juror], is that your verdict?

[JUROR]: I don't completely agree with everyone, but I think that there should be more evidence finding him guilty. I do go along with the guilty verdict.

THE COURT: Okay. It must be unanimous, you understand? So your verdict is guilty?

[JUROR]: Guilty.

THE COURT: $100,000 fine, .5 grams, over .5 grams. Is that correct[?]

[JUROR]: (Nods affirmatively)

THE COURT: Any question that that is correct?

[JUROR]: No.

We disagree with the defendant that this exchange demonstrates that the verdicts were not unanimous. Although her initial answer was equivocal, upon further questioning by the trial court the juror stated that her verdict was guilty. At no time did she express a belief that the defendant was not guilty of the offenses. As we have set out, the method by which the jury is polled and the determination of whether a juror's answer to the poll is equivocal are matters entrusted to the trial court's discretion. This assignment is without merit.

## II. Amount of Fines

In Tennessee, no fine greater than fifty dollars may be assessed against a citizen except by a jury. Tenn. Const. art. VI, § 14. In a case where the range of punishment includes a fine in excess of fifty dollars, the jury finding the defendant guilty shall fix the fine, if any, in excess of fifty dollars and report the fine with the verdict of guilty. Tenn. Code Ann. § 40-35-301(b) (2006). When imposing sentence, after the sentencing hearing, the trial court shall impose a fine, if any, not to exceed the fine fixed by the jury. Id.

This court has the authority to review fines imposed by the trial court. State v. Bryant, 805 S.W.2d 762, 766 (Tenn. 1991). The trial court's imposition of a fine, within the limits set by the jury, is to be based upon the factors provided by the Criminal Sentencing Reform Act of 1989. State v. Taylor, 70 S.W.3d 717, 723 (Tenn. 2002). The defendant's ability to pay the fine is a factor to be considered in determining the total sentence, but is not necessarily a controlling factor. State v. Patterson, 966 S.W.2d 435, 446 (Tenn. Crim. App. 1997). Trial and appellate courts must also consider other factors including prior history, potential for rehabilitation, financial means, mitigating and enhancement factors, and the seriousness of the conviction offense. Taylor, 70 S.W.3d at 723. A significant fine is not automatically precluded just because it works a substantial hardship on a defendant. State v. Marshall, 870 S.W.2d 532, 542 (Tenn. Crim. App. 1993). "A substantial fine may be punitive in the same manner that incarceration may be punitive." Patterson, 966 S.W.2d at 446.

In this case, the jury assessed a fine of $100,000 for each count, the maximum fine for an offender convicted of the sale of over .5 grams of cocaine. See Tenn. Code Ann. § 39-17-417(c)(1) (2006). At the hearing on the defendant's motion for a new trial, the trial court stated:

> Concerning the fine. The jury set that fine. This appears to be a person of some resource. If he were indigent it might be a different situation where the Court might view adjustment in an – more appropriate light . . . . And the jury, I don't recall. I think they might have had some information concerning that he had rental property and things of this nature. If not, the Court was aware of that at the time of sentencing and there is nothing to indicate that it's excessive. The record would probably support that the jury was offended by someone that would deal drugs and did impose or recommend the statutory maximum.

The defendant argues that the fines are excessive because "[t]he amount involved on each occasion was 1.2 grams and 1.1 grams base cocaine. Past jurors in Henry County have assessed fines of much less for larger amounts." He cites no authority in support of this claim, however. Furthermore, it appears that in fixing the fine the trial court properly considered the statutory factors, including the seriousness of the offense and the defendant's financial resources. Although the defendant has no prior criminal history, he was convicted of two counts of a Class B felony. His presentence report reflects that he has net assets of $339,963.93. He is not entitled to relief on this claim.

## III. Sentencing

When an accused challenges the length, range, or manner of service of a sentence, it is the duty of this court to conduct a *de novo* review on the record with a presumption that "the determinations made by the court from which the appeal is taken are correct." Tenn. Code Ann. § 40-35-401(d) (2006). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). The presumption does not apply to the legal conclusions reached by the trial court in sentencing the accused or to the determinations made by the trial court which are predicated upon uncontroverted facts. State v. Butler, 900 S.W.2d 305, 311 (Tenn. Crim. App. 1994); State v. Smith, 891 S.W.2d 922, 929 (Tenn. Crim. App. 1994); State v. Bonestel, 871 S.W.2d 163, 166 (Tenn. Crim. App. 1993), overruled on other grounds by State v. Hooper, 29 S.W.3d 1, 9 (Tenn. 2000). However, this court is required to give great weight to the trial court's determination of controverted facts as the trial court's determination of these facts is predicated upon the witnesses' demeanor and appearance when testifying.

In conducting a *de novo* review of a sentence, this court must consider (a) any evidence received at the trial and/or sentencing hearing, (b) the presentence report, (c) the principles of sentencing, (d) the arguments of counsel relative to sentencing alternatives, (e) the nature and characteristics of the offense, (f) any mitigating or enhancement factors, (g) any statements made by the accused in his own behalf, and (h) the accused's potential or lack of potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-103, -210 (2006); State v. Taylor, 63 S.W.3d 400, 411 (Tenn. Crim. App. 2001). Enhancement factors may be considered only if they are "appropriate for the offense" and "not already an essential element of the offense." Tenn. Code Ann. § 40-35-114 (2006).

The party challenging the sentence imposed by the trial court has the burden of establishing that the sentence is erroneous. Tenn. Code Ann. § 40-35-401, Sentencing Commission Cmts.; Ashby, 823 S.W.2d at 169. In this case, the defendant has the burden of illustrating the sentence imposed by the trial court is erroneous. If our review reflects that the trial court, following the statutory sentencing procedure, imposed a lawful sentence, after having given due consideration and proper weight to the factors and principles set out under the sentencing law and made findings of fact that are adequately supported by the record, then we may not modify the sentence even if we would have preferred a different result. State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

## A. Offender Classification

The defendant argues that the trial court should have found him to be an especially mitigated offender, not a standard offender. A trial court may find that the defendant is an especially mitigated offender if the defendant has no prior felony convictions *and* the court finds mitigating, but not enhancement, factors. Tenn. Code Ann. § 40-35-109(a) (2006) (emphasis added). Even if the defendant satisfies these statutory prerequisites, "[w]hether an accused should be sentenced as an especially mitigated offender is a question which rests within the sound discretion of the trial court." State v. Braden, 867 S.W.2d 750, 762 (Tenn. Crim. App. 1993). If the court finds the defendant is an especially mitigated offender, the court shall reduce the defendant's statutory Range I minimum sentence by ten percent, reduce the release eligibility date to twenty percent of the sentence, or both. Tenn. Code Ann. § 40-35-109(b) (2006).

The defendant argues that he should have been sentenced as an especially mitigated offender because he had no prior felony convictions and "[t]he crime itself was not one of violence, nor causing a victim serious bodily harm[.]" However, the trial court did not find any mitigating factors applicable to the defendant. The court specifically rejected the sole mitigating factor proposed by the defendant, that his conduct neither caused nor threatened serious bodily injury. Therefore, the defendant was ineligible to be sentenced as an especially mitigated offender.

## B. Denial of Full Probation

Finally, the defendant argues that he should have been granted full probation. A defendant shall be eligible for probation, subject to certain exceptions, if the sentence imposed upon the defendant is ten years or less. Tenn. Code Ann. § 40-35-303(a) (2006). Even if eligible, however, the defendant is not automatically entitled to probation as a matter of law. See Tenn. Code Ann. § 40-35-303(b). The burden is on the defendant to show the denial of probation was improper. Id.; see also State v. Summers, 159 S.W.3d 586, 599-600 (Tenn. Crim. App. 2004) (citing Ashby, 823 S.W.2d at 169); State v. Baker, 966 S.W.2d 429, 434 (Tenn. Crim. App. 1997) (stating that "[a] criminal defendant seeking full probation bears the burden on appeal of showing the sentence actually imposed is improper, and that full probation will be in both the best interest of the defendant and the public").

There is no bright line rule for determining when a defendant should be granted probation. State v. Bingham, 910 S.W.2d 448, 456 (Tenn. Crim. App. 1995), overruled on other grounds by State v. Hooper, 29 S.W.3d 1 (Tenn. 2000). Every sentencing decision necessarily requires a case-by-case analysis. Id. Factors to be considered include the circumstances surrounding the offense, the defendant's criminal record, the defendant's social history and present condition, the need for deterrence, and the best interest of the defendant and the public. State v. Goode, 956 S.W.2d 521, 527 (Tenn. Crim. App. 1997). Further, Tennessee Code Annotated section 40-35-103(1) states that a sentence of confinement should be based on the following three considerations:

(A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

(B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or

(C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant.

In imposing a split sentence of one year in the Department of Correction and seven years on probation, the trial court stated in part:

> I don't condone what has occurred. And the evidence was quite simply overwhelming. The video of his vehicle. And the man, essentially, was running a drug store out of his Ford Bronco or whatever the vehicle was . . . which gives the Court great concern, because I don't want to depreciate the seriousness of this offense.

The defendant argues that he is a favorable candidate for probation because he does not have a long history of criminal conduct, and measures less restrictive than confinement have not been applied to him unsuccessfully. See Tenn. Code Ann. § 40-35-103(1)(A), (C). However, the trial court found that confinement was necessary to avoid depreciating the seriousness of the offense. See Tenn. Code Ann. § 40-35-103(1)(B). This finding is supported by the record. As we have set out, the defendant was convicted of two counts of a Class B felony, the second-highest felony classification in our criminal code. He concedes that "[n]o one will deny the seriousness of the offense of drug dealing." The defendant has not satisfied his burden of showing that the denial of full probation was improper.[2]

## CONCLUSION

Based on the foregoing authorities and reasoning, the judgments of the trial court are affirmed.

ALAN E. GLENN, JUDGE

---

[2] As we understand, the defendant also argues that "deterrence alone should not have prevented the [trial court]" from granting him full probation. However, the record does not reflect that the trial court based its determination on the need for deterrence.